# CONNECTICUT DEPARTMENT OF PUBLIC SAFETY ET AL. *v.* DOE, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED

No. 01–1231. Argued November 13, 2002—Decided March 5, 2003

REHNQUIST, C. J., delivered the opinion of the Court, in which O'CONNOR, SCALIA, KENNEDY, SOUTER, THOMAS, GINSBURG, and BREYER, JJ., joined. SCALIA, J., filed a concurring opinion, *post,* p. 8. SOUTER, J., filed a concurring opinion, in which GINSBURG, J., joined, *post,* p. 9. STEVENS, J., filed an opinion concurring in the judgment, *post,* p. 110.

*Richard Blumenthal,* Attorney General of Connecticut, argued the cause for petitioners. With him on the briefs were *Gregory T. D'Auria,* Associate Attorney General, and *Lynn D. Wittenbrink, Perry Zinn Rowthorn,* and *Mark F. Kohler,* Assistant Attorneys General.

*Solicitor General Olson* argued the cause for the United States as *amicus curiae* urging reversal. With him on the brief were *Assistant Attorney General McCallum, Deputy Solicitor General Clement, Gregory G. Garre, Leonard Schaitman,* and *Mark W. Pennak.*

*Shelley R. Sadin* argued the cause for respondents. With her on the brief were *Drew S. Days III, Beth S. Brinkmann, Seth M. Galanter, Philip Tegeler,* and *Steven R. Shapiro.*\*

CHIEF JUSTICE REHNQUIST delivered the opinion of the Court.

We granted certiorari to determine whether the United States Court of Appeals for the Second Circuit properly en-

---

*Briefs of *amici curiae* urging reversal were filed for the District of Columbia et al. by *Robert R. Rigsby,* Corporation Counsel of the District of Columbia, *Charles L. Reischel,* Deputy Corporation Counsel, and *Edward E. Schwab,* Senior Assistant Corporation Counsel, and by the Attorneys General for their respective jurisdictions as follows: *Bill Pryor* of Alabama, *Bruce M. Botelho* of Alaska, *Janet Napolitano* of Arizona, *Bill Lockyer* of California, *Ken Salazar* of Colorado, *M. Jane Brady* of Delaware, *Robert A. Butterworth* of Florida, *Thurbert E. Baker* of Georgia, *Earl I. Anzai* of Hawaii, *James E. Ryan* of Illinois, *Steve Carter* of Indiana, *Carla J. Stovall* of Kansas, *Albert B. Chandler III* of Kentucky, *Richard P. Ieyoub* of Louisiana, *J. Joseph Curran, Jr.,* of Maryland, *Jennifer M. Granholm* of Michigan, *Mike Moore* of Mississippi, *Jeremiah W. (Jay) Nixon* of Missouri, *Don Stenberg* of Nebraska, *Frankie Sue Del Papa* of Nevada, *Patricia A. Madrid* of New Mexico, *Eliot Spitzer* of New York, *Robert Torres* of the Northern Mariana Islands, *W. A. Drew Edmondson* of Oklahoma, *Hardy Myers* of Oregon, *Anabelle Rodríguez* of Puerto Rico, *Charles M. Condon* of South Carolina, *Mark Barnett* of South Dakota, *Paul G. Summers* of Tennessee, *John Cornyn* of Texas, *Mark L. Shurtleff* of Utah, *Jerry W. Kilgore* of Virginia, *Christine O. Gregoire* of Washington, *Darrell V. McGraw, Jr.,* of West Virginia, and *James E. Doyle* of Wisconsin; for the National Governors Association et al. by *Richard Ruda* and *James I. Crowley;* for the Center for the Community Interest by *Robert J. Del Tufo;* and for the Criminal Justice Legal Foundation by *Kent S. Scheidegger.*

Briefs of *amici curiae* urging affirmance were filed for the Association for the Treatment of Sexual Abusers by *David A. Reiser;* for the Office of the Public Defender for the State of New Jersey by *Peter A. Garcia, Michael Z. Buncher,* and *Brian J. Neff;* and for the Public Defender Service for the District of Columbia et al. by *James W. Klein, Samia A. Fam,* and *Corinne A. Beckwith.*

*Lucy A. Dalglish* and *Gregg P. Leslie* filed a brief for the Reporters Committee for Freedom of the Press as *amicus curiae.*

joined the public disclosure of Connecticut's sex offender registry. The Court of Appeals concluded that such disclosure both deprived registered sex offenders of a "liberty interest," and violated the Due Process Clause because officials did not afford registrants a predeprivation hearing to determine whether they are likely to be "currently dangerous." *Doe* v. *Department of Public Safety ex rel. Lee*, 271 F. 3d 38, 44, 46 (2001) (internal quotation marks omitted). Connecticut, however, has decided that the registry requirement shall be based on the fact of previous conviction, not the fact of current dangerousness. Indeed, the public registry explicitly states that officials have not determined that any registrant is currently dangerous. We therefore reverse the judgment of the Court of Appeals because due process does not require the opportunity to prove a fact that is not material to the State's statutory scheme.

"Sex offenders are a serious threat in this Nation." *McKune* v. *Lile*, 536 U. S. 24, 32 (2002) (plurality opinion). "[T]he victims of sex assault are most often juveniles," and "[w]hen convicted sex offenders reenter society, they are much more likely than any other type of offender to be rearrested for a new rape or sexual assault." *Id.*, at 32–33. Connecticut, like every other State, has responded to these facts by enacting a statute designed to protect its communities from sex offenders and to help apprehend repeat sex offenders. Connecticut's "Megan's Law" applies to all persons convicted of criminal offenses against a minor, violent and nonviolent sexual offenses, and felonies committed for a sexual purpose. Covered offenders must register with the Connecticut Department of Public Safety (DPS) upon their release into the community. Each must provide personal information (including his name, address, photograph, and DNA sample); notify DPS of any change in residence; and periodically submit an updated photograph. The registration requirement runs for 10 years in most cases; those con-

victed of sexually violent offenses must register for life. Conn. Gen. Stat. §§ 54–251, 54–252, 54–254 (2001).

The statute requires DPS to compile the information gathered from registrants and publicize it. In particular, the law requires DPS to post a sex offender registry on an Internet Website and to make the registry available to the public in certain state offices. §§ 54–257, 54–258. Whether made available in an office or via the Internet, the registry must be accompanied by the following warning: " 'Any person who uses information in this registry to injure, harass or commit a criminal act against any person included in the registry or any other person is subject to criminal prosecution.' " § 54–258a.

Before the District Court enjoined its operation, the State's Website enabled citizens to obtain the name, address, photograph, and description of any registered sex offender by entering a zip code or town name. The following disclaimer appeared on the first page of the Website:

> " 'The registry is based on the legislature's decision to facilitate access to publicly-available information about persons convicted of sexual offenses. [DPS] has not considered or assessed the specific risk of reoffense with regard to any individual prior to his or her inclusion within this registry, and has made no determination that any individual included in the registry is currently dangerous. Individuals included within the registry are included solely by virtue of their conviction record and state law. The main purpose of providing this data on the Internet is to make the information more easily available and accessible, not to warn about any specific individual.' " 271 F. 3d, at 44.

Petitioners include the state agencies and officials charged with compiling the sex offender registry and posting it on the Internet. Respondent Doe (hereinafter respondent) is a convicted sex offender who is subject to Connecticut's Meg-

an's Law. He filed this action pursuant to Rev. Stat. § 1979, 42 U. S. C. § 1983, on behalf of himself and similarly situated sex offenders, claiming that the law violates, *inter alia*, the Due Process Clause of the Fourteenth Amendment. Specifically, respondent alleged that he is not a " 'dangerous sexual offender,' " and that the Connecticut law "deprives him of a liberty interest—his reputation combined with the alteration of his status under state law—without notice or a meaningful opportunity to be heard." 271 F. 3d, at 45–46. The District Court granted summary judgment for respondent on his due process claim. 132 F. Supp. 2d 57 (Conn. 2001). The court then certified a class of individuals subject to the Connecticut law, and permanently enjoined the law's public disclosure provisions.

The Court of Appeals affirmed, 271 F. 3d 38 (CA2 2001), holding that the Due Process Clause entitles class members to a hearing "to determine whether or not they are particularly likely to be currently dangerous before being labeled as such by their inclusion in a publicly disseminated registry." *Id.*, at 62. Because Connecticut had not provided such a hearing, the Court of Appeals enjoined petitioners from " 'disclosing or disseminating to the public, either in printed or electronic form (a) the Registry or (b) Registry information concerning [class members]' " and from " 'identifying [them] as being included in the Registry.' " *Ibid.* The Court of Appeals reasoned that the Connecticut law implicated a "liberty interest" because of: (1) the law's stigmatization of respondent by "implying" that he is "currently dangerous," and (2) its imposition of "extensive and onerous" registration obligations on respondent. *Id.*, at 57. From this liberty interest arose an obligation, in the Court of Appeals' view, to give respondent an opportunity to demonstrate that he was not "likely to be currently dangerous." *Id.*, at 62. We granted certiorari, 535 U. S. 1077 (2002).

In *Paul* v. *Davis*, 424 U. S. 693 (1976), we held that mere injury to reputation, even if defamatory, does not constitute

the deprivation of a liberty interest. Petitioners urge us to reverse the Court of Appeals on the ground that, under *Paul v. Davis,* respondent has failed to establish that petitioners have deprived him of a liberty interest. We find it unnecessary to reach this question, however, because even assuming, *arguendo,* that respondent has been deprived of a liberty interest, due process does not entitle him to a hearing to establish a fact that is not material under the Connecticut statute.

In cases such as *Wisconsin v. Constantineau,* 400 U. S. 433 (1971), and *Goss v. Lopez,* 419 U. S. 565 (1975), we held that due process required the government to accord the plaintiff a hearing to prove or disprove a particular fact or set of facts. But in each of these cases, the fact in question was concededly relevant to the inquiry at hand. Here, however, the fact that respondent seeks to prove—that he is not currently dangerous—is of no consequence under Connecticut's Megan's Law. As the DPS Website explains, the law's requirements turn on an offender's conviction alone—a fact that a convicted offender has already had a procedurally safeguarded opportunity to contest. 271 F. 3d, at 44 (" 'Individuals included within the registry are included *solely* by virtue of their conviction record and state law' " (emphasis added)). No other fact is relevant to the disclosure of registrants' information. Conn. Gen. Stat. §§ 54–257, 54–258 (2001). Indeed, the disclaimer on the Website explicitly states that respondent's alleged nondangerousness simply does not matter. 271 F. 3d, at 44 (" '[DPS] has made no determination that any individual included in the registry is currently dangerous' ").

In short, even if respondent could prove that he is not likely to be currently dangerous, Connecticut has decided that the registry information of *all* sex offenders—currently dangerous or not—must be publicly disclosed. Unless respondent can show that that *substantive* rule of law is defective (by conflicting with a provision of the Constitution), any

hearing on current dangerousness is a bootless exercise. It may be that respondent's claim is actually a substantive challenge to Connecticut's statute "recast in 'procedural due process' terms." *Reno* v. *Flores,* 507 U. S. 292, 308 (1993). Nonetheless, respondent expressly disavows any reliance on the substantive component of the Fourteenth Amendment's protections, Brief for Respondents 44–45, and maintains, as he did below, that his challenge is strictly a procedural one. But States are not barred by principles of *"procedural* due process" from drawing such classifications. *Michael H.* v. *Gerald D.,* 491 U. S. 110, 120 (1989) (plurality opinion) (emphasis in original). See also *id.,* at 132 (STEVENS, J., concurring in judgment). Such claims "must ultimately be analyzed" in terms of substantive, not procedural, due process. *Id.,* at 121. Because the question is not properly before us, we express no opinion as to whether Connecticut's Megan's Law violates principles of substantive due process.

Plaintiffs who assert a right to a hearing under the Due Process Clause must show that the facts they seek to establish in that hearing are relevant under the statutory scheme. Respondent cannot make that showing here. The judgment of the Court of Appeals is therefore

*Reversed.*

JUSTICE SCALIA, concurring.

I join the Court's opinion, and add that even if the requirements of Connecticut's sex offender registration law implicate a liberty interest of respondents, the categorical abrogation of that liberty interest by a validly enacted statute suffices to provide all the process that is "due"—just as a state law providing that no one under the age of 16 may operate a motor vehicle suffices to abrogate that liberty interest. Absent a claim (which respondents have not made here) that the liberty interest in question is so fundamental as to implicate so-called "substantive" due process, a properly enacted law can eliminate it. That is ultimately why,

as the Court's opinion demonstrates, a convicted sex offender has no more right to additional "process" enabling him to establish that he is not dangerous than (in the analogous case just suggested) a 15-year-old has a right to "process" enabling him to establish that he is a safe driver.

JUSTICE SOUTER, with whom JUSTICE GINSBURG joins, concurring.

I join the Court's opinion and agree with the observation that today's holding does not foreclose a claim that Connecticut's dissemination of registry information is actionable on a substantive due process principle. To the extent that libel might be at least a component of such a claim, our reference to Connecticut's disclaimer, *ante*, at 5, would not stand in the way of a substantive due process plaintiff. I write separately only to note that a substantive due process claim may not be the only one still open to a test by those in the respondents' situation.

Connecticut allows certain sex offenders the possibility of avoiding the registration and reporting obligations of the statute. A court may exempt a convict from registration altogether if his offense was unconsented sexual contact, Conn. Gen. Stat. § 54–251(c) (2001), or sexual intercourse with a minor aged between 13 and 16 while the offender was more than two years older than the minor, provided the offender was under age 19 at the time of the offense, § 54–251(b). A court also has discretion to limit dissemination of an offender's registration information to law enforcement purposes if necessary to protect the identity of a victim who is related to the offender or, in the case of a sexual assault, who is the offender's spouse or cohabitor. §§ 54–255(a), (b).*

---

*To mitigate the retroactive effects of the statute, offenders in these categories who were convicted between October 1, 1988, and June 30, 1999, were allowed to petition a court for restricted dissemination of registry information. §§ 54–255(c)(1)–(4). A similar petition was also available to any offender who became subject to registration by virtue of a conviction

Whether the decision is to exempt an offender from registration or to restrict publication of registry information, it must rest on a finding that registration or public dissemination is not required for public safety. §§ 54–251(b), 54–255(a), (b). The State thus recognizes that some offenders within the sweep of the publication requirement are not dangerous to others in any way justifying special publicity on the Internet, and the legislative decision to make courts responsible for granting exemptions belies the State's argument that courts are unequipped to separate offenders who warrant special publication from those who do not.

The line drawn by the legislature between offenders who are sensibly considered eligible to seek discretionary relief from the courts and those who are not is, like all legislative choices affecting individual rights, open to challenge under the Equal Protection Clause. See, e. g., 3 R. Rotunda & J. Nowak, Treatise on Constitutional Law § 17.6 (3d ed. 1999); L. Tribe, American Constitutional Law § 16–34 (2d ed. 1988). The refusal to allow even the possibility of relief to, say, a 19-year-old who has consensual intercourse with a minor aged 16 is therefore a reviewable legislative determination. Today's case is no occasion to speak either to the possible merits of such a challenge or the standard of scrutiny that might be in order when considering it. I merely note that the Court's rejection of respondents' procedural due process claim does not immunize publication schemes like Connecticut's from an equal protection challenge.

[For opinion of JUSTICE STEVENS concurring in the judgment, see *post*, p. 110.]

---

prior to October 1, 1998, if he was not incarcerated for the offense, had not been subsequently convicted of a registrable offense, and had properly registered under the law. § 54–255(c)(5).