*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0057P (6th Cir.)
File Name: 04a0057p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

DANIEL S. FULLMER,
　　　*Plaintiff-Appellee,*

　　*v.*

MICHIGAN DEPARTMENT OF
STATE POLICE, and STEPHEN
MADDEN, in his official
capacity as Director,
　　　*Defendants-Appellants.*

Nos. 02-1731/1864

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 01-73319—Victoria A. Roberts, District Judge.

Argued: December 2, 2003

Decided and Filed: February 25, 2004

Before: SILER, DAUGHTREY, and GIBBONS, Circuit
Judges.

———————

## COUNSEL

**ARGUED:** Margaret A. Nelson, OFFICE OF THE
ATTORNEY GENERAL, TORT DEFENSE DIVISION,

Lansing, Michigan, for Appellant. Thomas Lazar, Bingham
Farms, Michigan, for Appellee. **ON BRIEF:** Margaret A.
Nelson, OFFICE OF THE ATTORNEY GENERAL, TORT
DEFENSE DIVISION, Lansing, Michigan, for Appellant.
Thomas Lazar, Bingham Farms, Michigan, for Appellee.

———————

## OPINION

———————

MARTHA CRAIG DAUGHTREY, Circuit Judge. This
appeal arises from a successful challenge to the
constitutionality of the public registry provision of
Michigan's Sex Offenders Registration Act, MICH. COMP.
LAWS §§ 28.721-732 (2003), which was held to be invalid by
the district court in a judgment that included an injunction
against its immediate enforcement. Because we conclude that
the act creating the registry meets the due process standards
for such programs recently announced by the Supreme Court
in *Connecticut Department of Public Safety v. Doe*, 538
U.S. 1 (2003), we reverse the district court's judgment and
vacate the related injunction.

### *FACTUAL AND PROCEDURAL BACKGROUND*

Plaintiff Daniel Fullmer was convicted of an offense
requiring registration as a "sex offender" under Michigan's
Sex Offenders Registration Act, but one committed under
circumstances that, he contends, do not establish "future
dangerousness." Nevertheless, as a registered sex offender he
is required, among other obligations, to submit to state
officials information concerning his whereabouts and update
the information every 90 days. He must also submit to being
photographed at regular intervals, provide a blood sample for
DNA analysis, and notify authorities of any address change
within 10 days of such a change. He will remain in the
registry for 25 years, long after the end of any probation,

parole, or other form of release. The act provides for registries to be used both for law enforcement purposes and for public dissemination. Local police departments are required to make the registry information available on the internet. As a result, by using the Michigan State Department of Police website, anyone with internet access can search for convicted sex offenders by name, age, or zip code and retrieve an offender's name, sex, height, weight, race, eye color, date of birth, address, offense, and any known aliases. *See* Michigan Public Sex Offender Registry (PSOR) Inquiry (2002), *at* http://www.mipsor.state.mi.us.

In the district court, Fullmer claimed that the requirements of the act and the attendant penalties to which he is subject if he fails to meet them infringe upon his liberty and property interests arising out of the First, Fourth, Ninth, and Fourteenth Amendments to the United States Constitution and violate the Due Process Clause by changing his legal status and requiring him to register as a sex offender without providing him a hearing or conducting an assessment of his individual dangerousness or potential threat to the community. He filed suit against the Michigan State Department of Police and Lt. Col. Stephen Madden in his capacity as director of the State Police, challenging the constitutionality of the Michigan Sex Offender Registration Act, particularly the provision permitting public dissemination of information about registered offenders. The district court issued a declaratory judgment in Fullmer's favor, holding that the act constitutes an unconstitutional denial of due process because it does not provide registrants with notice or an opportunity to be heard on the issue of their dangerousness. The court also enjoined enforcement of the act pending the addition of adequate procedural safeguards. Later, in response to the defendants' motion to stay, the court modified the declaratory judgment and injunction, allowing the defendants to resume the requirements of the registry for law enforcement purposes, but not to continue the public

registry. The defendants now appeal the district court's judgment.

### DISCUSSION

The crux of the plaintiff's due process argument is that the registration and public disclosure aspects of the act deprive him of a constitutionally protected liberty interest "by stigmatizing him as a presently dangerous sex offender and imposing intrusive reporting obligations, which altered his legal status, without giving him notice and an opportunity to be heard on whether he [is a threat to] the public safety." Under well-settled precedent, however, damage to reputation alone does not implicate a protected liberty or property interest. *See Paul v. Davis*, 424 U.S. 693, 701 (1976); *Cutshall v. Sundquist*, 193 F.3d 466, 479 (6th Cir. 1999). Due process analysis is triggered only where the "stigma of damage to a reputation is coupled with another interest, such as employment," a requirement that has come to be known as the "stigma-plus" test. *Id.* The district court's decision to invalidate the Michigan statute was based on its conclusion that Fullmer met this test, relying principally upon the analysis in *Doe v. Department of Public Safety*, 271 F.3d 38 (2d Cir. 2001), in which the Second Circuit found that Connecticut's sex offender registry deprived sex offenders of a liberty interest and violated due process.

Since the entry of judgment in the district court, however, the Supreme Court has overturned the Second Circuit decision, making an important distinction between the particular type of registry utilized under the Connecticut statute and other sex offender registries. *See Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 17 (2003). That distinction involves the structure of the Connecticut registry, which is based on the fact of the registrant's conviction rather than his or her current "dangerousness." The Supreme Court held that, because the basis of the registration requirement is the fact of conviction alone, dangerousness and the opportunity

to be heard on the issue of dangerousness are simply not material issues. *See id*. at 7 - 8.

In reaching the conclusion that due process was not implicated by the Connecticut statute, the Supreme Court noted the following disclaimer on the registry's website makes clear that no determination of registrants' dangerousness has been made, explaining that "[i]ndividuals included within the registry are included *solely* by virtue of their conviction record and state law." *See id*. at 7 (emphasis in original).

Similarly, Michigan's registry is based solely upon the fact of an offender's conviction; the registry website does not indicate that a determination has been made concerning the dangerousness of those listed in the registry, but only that the registrants are convicted sex offenders. *See* Michigan Public Sex Offender Registry (PSOR) Inquiry (2002), *at* http://www.mipsor.state.mi.us. Nevertheless, the plaintiff points to a provision in the Michigan registration act to the effect that "[t]he legislature has determined that a person who has been convicted of committing an offense covered by this act poses a potential serious menace and danger to the health, safety, morals, and welfare of the people" and that "[t]he registration requirements of this act are intended to provide law enforcement and the people . . . an . . . effective means to monitor those persons who pose such a potential danger." MICH. COMP. LAWS § 28.721a (2003). He contends that this language in the statute, even though it did not appear in the information presented on the website, deprives him of his "constitutionally protected interest in not being falsely labeled as a dangerous sex offender" and is sufficient to invalidate the act despite the holding in *Connecticut Department of Public Safety v. Doe*.

We disagree. Regardless of the language in the statute, the information on the registry's website makes it clear to anyone accessing the registry that all sex offenders convicted after a

certain date are listed, without exception. Moreover, there is nothing on the website to indicate that the state has made an individual determination as to a registrant's dangerousness. Hence, the Michigan registry serves the same purpose and has the same effect as its Connecticut counterpart. As the Court indicated in *Connecticut Department of Public Safety v. Doe*, the state "has decided that the registry information of *all* sex offenders – currently dangerous or not – must be publicly disclosed" and that "states are not barred by principles of '*procedural* due process' from drawing such classifications." *Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. at 11 (emphasis in original). The Court left open the possibility that a plaintiff might be able to show that a registry of this kind violates substantive due process, but because the plaintiff in this case, like the plaintiff in *Doe*, did not rely on substantive due process as a ground for relief, that issue is not before us at this time.

### *CONCLUSION*

In light of the Supreme Court's intervening decision in *Connecticut Department of Public Safety v. Doe*, and given the similarity between Connecticut's and Michigan's statutes, we conclude that the district court's decision invalidating the Michigan statute under the Fourteenth Amendment to the United States Constitution cannot be sustained. We therefore REVERSE the judgment of the district court holding unconstitutional the Michigan Sex Offenders Registration Act, MICH. COMP. LAWS §§ 28.721-732 (2003). The question of the authority of the district court to enjoin immediate enforcement action by the state thereby becomes moot, and we VACATE the order of injunction without ruling on the Eleventh Amendment question raised by the state on appeal.