*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 07a0269p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

JOHN DOE, XIV,

          *Plaintiff-Appellant,*

    *v.*

No. 05-2631

MICHIGAN DEPARTMENT OF STATE POLICE and COL. TADARIAL STURDIVANT, Director, Michigan State Police,

          *Defendants-Appellees.*

———————————

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 05-70869—Nancy G. Edmunds, District Judge.

Argued: March 15, 2007

Decided and Filed: July 18, 2007

Before: COLE, CLAY, and GILMAN, Circuit Judges.

———————————

**COUNSEL**

———————————

**ARGUED:** Douglas R. Mullkoff, KESSLER, MULLKOFF & HOOBERMAN, Ann Arbor, Michigan, for Appellant. Margaret A. Nelson, MICHIGAN DEPARTMENT OF ATTORNEY GENERAL, Lansing, Michigan, for Appellees. **ON BRIEF:** Douglas R. Mullkoff, KESSLER, MULLKOFF & HOOBERMAN, Ann Arbor, Michigan, Elisha V. Fink, FINK LAW PLLC, Dexter, Michigan, for Appellant. Margaret A. Nelson, MICHIGAN DEPARTMENT OF ATTORNEY GENERAL, Lansing, Michigan, for Appellees. Miriam Aukerman, Michael J. Steinberg, Kary L. Moss, ACLU FUND OF MICHIGAN, Detroit, Michigan, for Amicus Curiae.

———————————

**OPINION**

———————————

RONALD LEE GILMAN, Circuit Judge. This is an appeal from the district court's award of summary judgment to the state of Michigan in a putative class action case that challenges the constitutionality of certain provisions of the State's Sex Offender Registration Act (SORA). The plaintiff represents one of two proposed classes of individuals who were assigned to "youthful trainee status" under the State's Holmes Youthful Trainee Act (HYTA) for sex offenses and, under Michigan law, were then required to register as sex offenders. On appeal, the plaintiffs contend that the district court erred when it found that they had suffered no due process or equal protection

1

violations from the requirement that they register and appear on Michigan's Public Sex Offender Registry (PSOR).  For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I.  BACKGROUND

The HYTA, Mich. Comp. Laws § 762.11 *et seq.*, is essentially a juvenile diversion program for criminal defendants under the age of 21.  It provides in pertinent part as follows:

> [I]f an individual pleads guilty to a criminal offense, committed on or after the individual's seventeenth birthday but before his or her twenty-first birthday, the court of record having jurisdiction of the criminal offense may, without entering a judgment of conviction and with the consent of that individual, consider and assign that individual to the status of youthful trainee.

Mich. Comp. Laws § 762.11(1) (2004).  An assignment to youthful trainee status does not constitute a conviction for a crime unless the court revokes the defendant's status as a youthful trainee.  *Id.* § 762.12.  If and when the defendant successfully completes his or her status as a youthful trainee, the court "shall discharge the individual and dismiss the proceedings."  Mich. Comp. Laws § 762.14(1).  Once the individual is so released, he or she "shall not suffer a civil disability or loss of right or privilege" because of the assignment.  *Id.* § 762.14(2).  "Unless the court enters a judgment of conviction against the individual for the criminal offense . . . , all proceedings regarding the disposition of the criminal charge and the individual's assignment as youthful trainee shall be closed to public inspection."  *Id.* § 762.14(4).

A defendant assigned to youthful trainee status may, depending on the possible sentence for the underlying offense, serve up to three years in custodial supervision, up to one year in the county jail, or up to three years on probation.  *Id.* § 762.13.  In essence, a juvenile criminal defendant offers a guilty plea to the court.  The court then holds the plea in abeyance under the HYTA until the defendant completes the requirements of the youthful-trainee program.  At that time, the court discharges the defendant and dismisses the proceedings.

In 1994, Michigan adopted the SORA, Mich. Comp. Laws §§ 28.721-.736, in response to Congress's Jacob Wetterling Act, 42 U.S.C. § 14071, which requires states to establish registries of convicted sex offenders.  The SORA, as it was first enacted, was designed as a tool solely for law enforcement agencies, and registry records were kept confidential.  1994 Mich. Pub. Acts 295 ("[A] registration is confidential and shall not be open to inspection except for law enforcement purposes.").  As of September 1, 1999, however, the SORA was amended to create the PSOR, which can be accessed by anyone via the internet.  The PSOR website has a disclaimer posted on its front page that describes the registry as follows:

> This registry is made available through the Internet with the intent to better assist the public in preventing and protecting against the commission of future criminal sexual acts by convicted sex offenders.
> . . .
> The registration requirements of the Sex Offenders Registration Act are intended to provide the people of this state with an appropriate, comprehensive, and effective means to monitor those persons who pose such a potential danger.

Michigan Public Sex Offender Registry, *available at* http://www.mipsor.state.mi.us (last visited May 17, 2007).  The PSOR provides a less-detailed version of the information available in the law enforcement database, but includes names, aliases, addresses, physical descriptions, birth dates, photographs, and specific offenses for all convicted sex offenders in the state of Michigan.  Mich. Comp. Laws § 28.728(4)(A).

When the Michigan legislature enacted the SORA, it also amended the HYTA to provide that even individuals assigned to youthful trainee status were required to register as sex offenders. 1994 Mich. Pub. Acts 286 (adding a provision to § 14 of the HYTA stating that "[a]n individual assigned to youthful trainee status for a listed offense enumerated in section 2 of the sex offenders registration act is required to comply with the requirements of that act"). This new provision (Mich. Comp. Laws § 762.14(3)) is in effect an exception to HYTA's general provision (Mich. Comp. Laws § 762.14(4)) that "[u]nless the court enters a judgment of conviction against the individual . . . , all proceedings regarding the disposition of the criminal charge and the individual's assignment as youthful trainee shall be closed to public inspection." Mich. Comp. Laws § 762.14(4).

The HYTA also requires that for every individual assigned to youthful trainee status "for a listed offense enumerated in section 2 of [the SORA] . . . , [law enforcement agencies] shall register the individual or accept the individual's registration as provided under [the SORA]." Mich. Comp. Laws § 762.13(6). As a result, the PSOR includes information about individuals who were assigned to youthful trainee status under the HYTA, satisfied their obligations, and thus were never convicted of their offense.

Michigan amended the SORA and the HYTA again in 2004. Prior to the 2004 amendment, the SORA defined the term "convicted" to include, in relevant part:

(A)     Having a judgment of conviction or a probation order entered in a court having jurisdiction over criminal offenses, including a conviction subsequently set aside pursuant to Act No. 213 of the Public Acts of 1965, being sections 780.621 to 780.624 of the Michigan Compiled Laws.

(B)     Being assigned to youthful trainee status pursuant to sections 11 to 15 of chapter II of the code of criminal procedure, Act No. 175 of the Public Acts of 1927, being sections 762.11 to 762.15 of the Michigan Compiled Laws.

1994 Mich. Pub. Acts 295. But effective October 1, 2004, the definition of "convicted" was amended to include:

(A)     Being assigned to youthful trainee status under sections 11 to 15 of chapter II of the code of criminal procedure, 1927 PA 175, MCL 762.11 to 762.15, *before October 1, 2004*.

(B)     Being assigned to youthful trainee status under sections 11 to 15 of chapter II of the code of criminal procedure, 1927 PA 175, MCL 762.11 to 762.15, *on or after October 1, 2004 if the individual's status of youthful trainee is revoked and an adjudication of guilt is entered*.

2004 Mich. Pub. Acts 240 (emphasis added).

In addition, the HYTA was amended in 2004 to make it unavailable to most individuals under 21 years of age who had been charged with criminal sexual conduct. Only those individuals charged with so-called Romeo-and-Juliet offenses, defined as consensual sexual activity of a youth between the ages of 14 and 21 with another youth between the ages of 13 and 16, are still eligible for youthful trainee status. *See* Mich. Comp. Laws § 750.520d(1)(a) (2004) (sexual penetration of a person between ages 13 and 16); Mich. Comp. Laws § 750.520e(1)(a) (2004) (sexual contact with a person between ages 13 and 16 if the actor is five or more years older).

The 2004 amendment was motivated, in part, by concerns that "individuals who do not pose a danger to the public, and who do not pose a danger of reoffending," including "teens engaging in consensual sex," are required to

register as sex offenders unnecessarily. House Legis. Analysis Section, Sex Offender Registration Revisions: Juveniles, H.B. 4920, 5195 & 5240, at 1 (Mich. 2004), http://www.legislature.mi.gov/documents/2003-2004/billanalysis/House/pdf/2003-HLA-4920-a.pdf (hereinafter *Sex Offender Registration Revisions: Juveniles*).

Both the original and the amended versions of the SORA, however, define the term "convicted" to reach youthful trainees charged with certain sex offenses. The SORA thus creates an exception to the HYTA's provisions that "assignment of an individual to the status of youthful trainee . . . is not a conviction for a crime" and that an "individual assigned to the status of youthful trainee shall not suffer a civil disability or loss of right or privilege following his or her release from that status because of his or her assignment as a youthful trainee." Mich. Comp. Laws §762.14(2). Notwithstanding the HYTA, the SORA thus requires youthful trainees charged with certain sex offenses to register as "convicted sex offenders" and information about their identities and "convictions" appears on the PSOR.

This case involves two distinct groups of plaintiffs, one headed by pseudonymous plaintiff John Doe and the other headed by pseudonymous plaintiff Samuel Poe. Both groups of plaintiffs allege that their members were charged with criminal sexual offenses, assigned to youthful trainee status, and "sentenced" under the HYTA on or before October 1, 2004. As of the date of the initial complaint (March 7, 2005), however, the members of the first group, headed by John Doe, had completed their HYTA obligations, been discharged from youthful trainee status, and had their criminal proceedings under § 14 of the HYTA dismissed by the sentencing courts. They are accordingly required to register as convicted sex offenders under the SORA and information about them appears on the PSOR. In contrast, the group headed by Samuel Poe had not yet completed their obligations under the HYTA program nor had their criminal proceedings been dismissed as of the date of the complaint. They will be required to register as convicted sex offenders upon the termination of their youthful trainee status, but are not presently so obligated. Had the Doe or Poe plaintiffs been assigned to youthful trainee status *on or after* October 1, 2004, however, they would have been exempt from the registration requirements of the SORA unless their youthful trainee status was revoked prior to their final release under the HYTA.

The plaintiffs have sued the Michigan Department of State Police and its then-director, Tadarial Sturdivant, in his official capacity, alleging violations of their right to privacy, substantive due process rights, and equal protection rights. (Both defendants will hereafter be collectively referred to as "the State.") In addition to declaratory and injunctive relief, the plaintiffs seek attorney fees and costs. The State moved for summary judgment on all of the claims. In light of prior decisions from the Supreme Court (addressing procedural due process arguments) and this court (addressing substantive due process arguments) that had upheld similar sex-offender registration laws, the district court granted the State's motion. This timely appeal by the John Doe plaintiffs followed.

## II. ANALYSIS

### A.     Standard of review

We review the district court's grant of summary judgment de novo. *Int'l Union v. Cummins, Inc.*, 434 F.3d 478, 483 (6th Cir. 2006). Summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that

one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

## B.     Plaintiffs' substantive due process claims

The plaintiffs' first amended class action complaint alleges two causes of action based upon a substantive due process theory. Their first cause of action asserts that they have a "constitutionally protected liberty interest and fundamental right to be left alone." They claim that registration under the SORA violates their liberty interest because personal identifying information about them is listed on the PSOR and is accessible to the general public via the internet, despite the fact that they "have not been convicted of a crime and are entitled to a second chance" under the HYTA. Furthermore, the plaintiffs contend that the disclaimer language that appears on the PSOR labels them "currently dangerous sex offenders" even though there has been no determination of their dangerousness and despite the fact that youthful trainee status is available only to defendants who are found to be at low risk to reoffend.

Doe and Poe assert in their second cause of action that the SORA and its requirement that youthful trainees register as convicted sex offenders violates their substantive due process rights "by continuing to mandate their registration and public disclosure of information" about their offenses "which is not made public under HYTA, and thus leads to an absurd result that is not in accord with the plain language and legislative goals of the HYTA." The district court considered both causes of action to be alleging the same substantive due process claim, noting that the liberty interest raised in the first cause of action "is best viewed as one of the 'substantive' rights provided by the Due Process Clause of the Fourteenth Amendment." In granting summary judgment to the State on both of these causes of action, the district court relied on the Supreme Court's decision upholding the Connecticut sex offender registry against a due process challenge, *Connecticut Department of Public Safety v. Doe*, 538 U.S. 1 (2003), and a Sixth Circuit case upholding the Tennessee sex offender registry, *Cutshall v. Sundquist*, 193 F.3d 466 (6th Cir. 1999).

The plaintiffs in *Department of Public Safety* raised a procedural due process challenge to Connecticut's sex offender registry, contending that the state's failure to provide a hearing on a registrant's potential danger to the community violated their due process rights. This argument failed, according to the Supreme Court, because Connecticut's sex offender registry statute made no distinction between offenders based on dangerousness. 538 U.S. at 7-8. Instead, the Connecticut statute reflected the state's decision that "the registry information of *all* sex offenders—currently dangerous or not—must be publicly disclosed." *Id*. at 7 (emphasis in original). The Court, however, left open the question of whether a substantive due process challenge might succeed, noting:

> It may be that respondent's claim is actually a substantive challenge to Connecticut's statute recast in "procedural due process" terms. . . . But States are not barred by principles of "*procedural* due process" from drawing such classifications. Such claims must ultimately be analyzed in terms of substantive, not procedural, due process. Because the question is not properly before us, we express no opinion as to whether Connecticut's [sex offender registry law] violates principles of substantive due process.

*Id*. at 8 (citations and quotation marks omitted).

In the year following *Department of Public Safety*, a procedural due process challenge to the Michigan SORA reached this court. *Fullmer v. Mich. Dep't of State Police*, 360 F.3d 579, 582 (6th Cir. 2004). The *Fullmer* court, following the lead of *Department of Public Safety*, left open the substantive due process question while upholding the SORA against the procedural due process

challenge. *Id*. at 582 ("[B]ecause the plaintiff in this case . . . did not rely on substantive due process as a ground for relief, that issue is not before us at this time.").

After acknowledging that the plaintiffs in the present case were "attempting to litigate the question that the Supreme Court explicitly left open," the district court relied on the analysis set forth in *Cutshall v. Sundquist*, 193 F.3d 466 (6th Cir. 1999), to grant summary judgment to the State on the plaintiffs' substantive due process challenge. *Cutshall*, like *Department of Public Safety* and *Fullmer*, involved a procedural due process challenge to a state sex-offender registry statute. 193 F.3d at 469. The *Cutshall* plaintiff alleged that Tennessee's Sex Offender Registration and Monitoring Act violated the Double Jeopardy, Ex Post Facto, Bill of Attainder, Due Process, and Equal Protection Clauses of the United States Constitution, in addition to the Eighth Amendment, the constitutional right to interstate travel, and the constitutional right to privacy. *Id*. On appeal, this court upheld the statute and reversed the district court's decision that required the state to hold a hearing on the offender's alleged danger to the community prior to placing him or her on the registry. *Id*. at 483.

The *Cutshall* court's discussion of this procedural due process challenge rested in large part on a substantive due process analysis. Cutshall, like the plaintiffs in the present case, alleged that the registry statute violated his due process rights because it imposed a stigma and deprived him of employment and privacy. This court dismissed Cutshall's argument on the basis that he did not allege that the Tennessee statute limited "the ability of registrants to seek and obtain any type of employment." *Id*. at 479. The court concluded that "[a] charge that merely makes a plaintiff less attractive to other employers but leaves open a definite range of opportunity does not constitute a liberty deprivation." *Id*. (citation and quotation marks omitted). Furthermore, the court found no case recognizing "a general right to private employment." *Id*.

The district court in the present case also discussed the Eleventh Circuit case of *Doe v. Moore*, 410 F.3d 1337 (11th Cir. 2005), which explicitly addressed a substantive due process challenge to Florida's sex-offender registry statute. After defining the right asserted as the "right . . . to refuse [postconviction] registration of his or her personal information with Florida law enforcement and prevent publication of this information on Florida's Sexual Offender/Predator website," *id*. at 1344, the Eleventh Circuit found that this assertion did not constitute a "fundamental right." The *Moore* court accordingly reviewed the substantive due process challenge under the rational-basis standard and determined that the statute satisfied Florida's stated interest in "protecting the public from sexual abuse." *Id*. at 1345 (brackets omitted).

Doe and Poe argue that the district court in the present case erred when it failed to address the "interface of the HYTA with the SORA." They also contend that the cases that the district court relied on are inapplicable to the situation of youthful trainees who entered a deferred guilty plea to a charge of criminal sexual conduct in exchange for a dismissal of the charges against them and a promise of privacy. This argument principally relates to the Doe plaintiffs, who had completed their obligations under the HYTA and had been discharged from youthful trainee status as of the time that the present complaint was filed. Unlike the Poe plaintiffs, who had not yet been discharged from youthful trainee status, the criminal records of the Doe plaintiffs had already been sealed. The Doe plaintiffs thus contend that the registration requirement abrogated the State's promise under the HYTA that the charges against them would be dismissed and essentially would cease to exist.

## C.        Substantive due process analysis

The substantive component of the Due Process Clause protects "fundamental rights" that are so "implicit in the concept of ordered liberty" that "neither liberty nor justice would exist if they were sacrificed." *Palko v. Conn.*, 302 U.S. 319, 325 (1937). Such rights include "the rights to marry, to have children, to direct the education and upbringing of one's children, to marital privacy,

to use contraception, to bodily integrity, and to abortion." *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997) (citations omitted). The Supreme Court has cautioned, however, that it has "always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Id.*

When reviewing a substantive due process claim, we must first craft a "careful description of the asserted right," *Reno v. Flores*, 507 U.S. 292, 302 (1993), and then determine whether that right is "deeply rooted in this Nation's history and tradition" and "implicit in the concept of ordered liberty," such that it can be considered a "fundamental right." *Glucksberg*, 521 U.S. at 721. Legislation that infringes on a fundamental right is reviewed under the strict-scrutiny test and will be invalidated unless it is "narrowly tailored to serve a compelling state interest." *Flores*, 507 U.S. at 302.

### 1. *The right asserted*

The *amicus curia* in this case, the ACLU of Michigan, states that the right asserted here is "the right of youths adjudicated under HYTA to have offense information be kept private where those youths, in exchange for a promise of privacy, pled guilty and gave up their [Sixth Amendment] rights . . . ." In their first amended complaint, the plaintiffs assert a general right to have information about their HYTA proceedings be excluded from public disclosure and "to be left alone by not being falsely designated as currently dangerous sex offenders who pose a threat to the public safety." Having considered both views, we believe that the best definition of the right asserted by the plaintiffs is that their HYTA records should be sealed and exempted from public disclosure because, at the conclusion of their youthful trainee status, the criminal charges against them were or will be dismissed. As a result, the right asserted also encompasses the right to be free from being labeled a convicted sex offender when, under the HYTA, the plaintiffs were never convicted of such an offense.

### 2. *Implicit in the concept of ordered liberty*

Other circuit courts have considered substantive due process arguments against the registration requirement of sex-offender registries. Each appellate court to have done so has found that the registry laws are constitutional. *See Moore*, 410 F.3d at 1345 (holding that the right to refuse to register under a sex-offender statute is not a fundamental right); *Doe v. Tandeske*, 361 F.3d 594, 597 (9th Cir. 2004) (per curiam) ("[P]ersons who have been convicted of serious sex offenses do not have a fundamental right to be free from . . . registration and notification requirements. . . ."); *Gunderson v. Hvass*, 339 F.3d 639, 643 (8th Cir. 2003) (concluding that the sex-offender registration statute does not infringe the plaintiff's fundamental right to a presumption of innocence); *Paul P. v. Verniero*, 170 F.3d 396, 405 (3d Cir. 1999) (holding that the effects of registering under a sex-offender registration statute fail "to fall within the penumbra of constitutional privacy protection").

After giving due consideration to this issue, we now join our sister circuits in concluding that the right asserted here is not a fundamental right deeply rooted in our Nation's history. We reiterate that "not all rights of privacy or interests in nondisclosure of private information are of constitutional dimension, so as to require balancing government action against individual privacy." *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1062 (6th Cir. 1998) (analyzing the substantive due process rights of undercover police officers in not having their personal identifying information disclosed to criminal defendants).

We acknowledge, however, that the plaintiffs' substantive due process claim presents a close question because the sex-offender registry in fact discloses information about the plaintiffs that is not entirely accurate. As the district court noted in its opinion, "[e]ven putting aside the parties['] arguments about the accurate definition of the word 'convicted,' there remains a problem with

Michigan's scheme:  The information published about Plaintiffs would not otherwise be publicly available."  These plaintiffs have not been convicted by a jury nor has a judge accepted their guilty pleas.  Instead, they have been "sentenced," if that word is even applicable, to a form of a diversion program designed to punish youthful offenders who have been deemed unlikely to reoffend.  The consideration offered by the State for the relinquishment of the plaintiffs' Sixth Amendment rights is that at the conclusion of their youthful trainee status, the charges against them will be dismissed and their criminal records sealed.  But the interaction of the SORA and the HYTA abrogates this agreement for youthful trainees charged with sex offenses prior to October 1, 2004.  This does not rise to the level of a substantive due process violation based upon the relevant caselaw, but the inconsistency and the harms to the plaintiffs from their inclusion on the registry are troubling and noteworthy.

### 3.     *Rational-basis review*

We evaluate statutes that do not implicate a plaintiff's fundamental rights by utilizing a rational-basis standard of review.  *LensCrafters, Inc. v. Robinson*, 403 F.3d 798, 806 (6th Cir. 2005).  Specifically, we ask whether the statute at issue is "rationally related to legitimate government interests."  *Glucksberg*, 521 U.S. at 728.  This standard is highly deferential; courts hold statutes unconstitutional under this standard of review only in rare or exceptional circumstances.

Michigan contends that its interest in the SORA and the PSOR is "to better assist law enforcement officers and the people of this state in preventing and protecting against the commission of future criminal sexual acts by convicted sex offenders."  Mich. Comp. Laws § 28.721a (2002).  The State further argues that the public has an "interest in knowing the whereabouts of sex offenders" that "outweighs any privacy interest [that] Plaintiffs have in their criminal records, home addresses and other public registration information."  Although we believe that the State's justification sweeps too broadly, especially with reference to the plaintiffs in the present case, we are constrained to conclude that the rationale articulated in the statute itself satisfies the rational-basis standard.

### 4.     *Stigma-plus test*

The plaintiffs next contend that the district court erred when it found that they did not meet the "stigma-plus" test for finding that Michigan's sex-offender registration requirement infringed their liberty interests.  As defined by the Supreme Court in *Paul v. Davis*, 424 U.S. 693 (1976), the stigma-plus test is used to analyze a due process claim where the action taken by the state injures the plaintiff's reputation.  "The frequently drastic effect of the 'stigma' which may result from defamation by the government . . . does not establish the proposition that reputation alone, apart from some more tangible interests such as employment, is either 'liberty' or 'property' by itself sufficient to invoke the procedural due process protection of the Due Process Clause."  *Id*. at 701.  A successful plaintiff must therefore show that the state's action both damaged his or her reputation (the stigma) and that it "deprived [him or her] of a right previously held under state law" (the plus).  *Id*. at 708.

The stigma-plus test is used to determine whether state action violates an individual's procedural due process rights.  *Id*. at 710 n.5 ("Our discussion in Part III [discussing the stigma-plus test] is limited to consideration of the procedural guarantees of the Due Process Clause and is not intended to describe those substantive limitations upon state action which may be encompassed within the concept of 'liberty' expressed in the Fourteenth Amendment.").  Our review of the caselaw has failed to identify any case that applies the stigma-plus test to a substantive due process claim.  *Cf. Brown v. City of Michigan City, Ind.*, 462 F.3d 720, 729-32 (7th Cir. 2006) (applying the test to a procedural due process claim); *Hill v. Borough of Kutztown*, 455 F.3d 225, 235-36 (3d Cir.

2006) (same); *O'Connor v. Pierson*, 426 F.3d 187, 195-96 (2d Cir. 2005) (same); *Fullmer*, 360 F.3d at 581-82 (same).

Procedural due process challenges to state sex-offender registry statutes that mandate the registration of all convicted sex offenders have been foreclosed by the Supreme Court's decision in *Department of Public Safety*.  538 U.S. at 1.  The Supreme Court held that procedural due process does not entitle an individual convicted of a sex offense to a hearing to determine whether he or she is sufficiently dangerous to be included in the state's convicted sex-offender registry where the statute requires the registration of all sex offenders.  538 U.S. at 7-8 (holding that the state "has decided that the registry information of *all* sex offenders—currently dangerous or not—must be publicly disclosed" and that "[s]tates are not barred by principles of '*procedural* due process' from drawing such classifications") (emphases in original).

Michigan's SORA likewise requires the registration of all convicted sex offenders.  We have previously considered a procedural due process challenge to the SORA and have concluded that it has "the same purpose and . . . the same effect as its Connecticut counterpart."  *Fullmer*, 360 F.3d at  582.  Any challenge to the SORA that sounds in procedural due process is therefore foreclosed.  Moreover, the plaintiffs and the ACLU of Michigan both conceded in their briefs to the district court that *Department of Public Safety* foreclosed any procedural due process claim against Michigan's sex-offender registry.  We therefore conclude that the district court erred in applying the stigma-plus test to the plaintiffs' substantive due process claims, but find that this error was harmless because the substantive due process claims also fail on the merits.

**D.        Equal protection claim**

The plaintiffs further raise an equal protection argument against the SORA and the HYTA requirements that they register as convicted sex offenders.  "The Equal Protection Clause of the Fourteenth Amendment . . . is essentially a direction that all persons similarly situated should be treated alike."  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  In the present case, the plaintiffs and the ACLU of Michigan contend that Michigan can articulate no reason that would justify (1) requiring youthful trainees charged with sex offenses to register while not requiring youthful trainees charged with other offenses to do so; and (2) requiring Romeo-and-Juliet offenders charged before October 1, 2004 to register as convicted sex offenders but not requiring Romeo-and-Juliet offenders charged thereafter to so register.

The district court concluded that neither of these distinctions between groups of youthful trainees implicated a suspect classification that would trigger review under the strict-scrutiny standard.  Citing *Cleburne* for the "general rule . . . that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest," 473 U.S. at 440, the district court determined that the rational-basis standard of review applied.

The district court then concluded that Michigan had articulated a rational basis for distinguishing between youthful trainees involved in sex offenses and those involved in other kinds of offenses.  Michigan's rationale was that sex offenders pose a particular public safety concern and that the registration requirement was rationally related to the purpose of providing accurate, up-to-date information about convicted sex offenders for use by law enforcement agencies and the public.

But the district court found the distinction between the pre-October 1, 2004 and post-October 1, 2004 Romeo-and-Juliet offenders more difficult to justify.  Noting, however, that "it is the province of the legislature to draw lines such as this," and that "[t]he Michigan legislature is not required to bestow this newly recognized benefit [of not being required to register] upon all past

offenders," the district court held that Michigan had "met the low threshold of rational basis review."

On appeal, the plaintiffs and the ACLU of Michigan argue that the district court erred in applying the rational-basis standard of review to their equal protection claim as it relates to the Romeo-and-Juliet offenders. They note that the Supreme Court has not articulated the applicable standard of review for equal protection challenges to legislative classifications affecting sex-offender registration. *See Dep't of Public Safety*, 538 U.S. at 10 (Souter, J., concurring) ("Today's case is no occasion to speak [to] . . . the standard of scrutiny that might be in order" for reviewing an equal protection challenge to a sex offender registry statute.). But they contend that strict scrutiny should apply because the effect of the HYTA and the SORA registration requirements is to distinguish between similarly situated persons in terms of how they are classified for treatment in the criminal justice system. *See Skinner v. Okla. ex rel. Williamson*, 316 U.S. 535 (1942) (holding that imposing different restrictions on individuals who committed the same type of offense violates the Equal Protection Clause).

### 1.      *Suspect class*

The Supreme Court has designated several classifications as suspect and accordingly subject to heightened scrutiny under the Equal Protection Clause. These include classifications based on race, alienage, national origin, gender, or illegitimacy. In the present case, the HYTA and the SORA classify pre-October 2004 Romeo-and-Juliet offenders differently from post-October 2004 Romeo-and-Juliet offenders. We conclude, however, that the classification raised by the plaintiffs does not implicate a suspect class and that rational-basis review is accordingly appropriate.

### 2.      *Rational-basis review*

As previously noted, a statute will be considered constitutional under rational-basis review if there is "any reasonably conceivable state of facts that could provide a rational basis for" it. *FCC v. Beach Commc'ns*, 508 U.S. 307, 313 (1993). The Supreme Court has explained the application of this standard of review as follows:

> On rational-basis review, a classification in a statute . . . comes to us bearing a strong presumption of validity, and those attacking the rationality of the legislative classification have the burden to negative every conceivable basis which might support it. Moreover, because we never require a legislature to articulate its reasons for enacting a statute, it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature.

*Id*. at 314-15. The burden on the plaintiffs under rational-basis review is therefore a heavy one.

Michigan's stated purpose for the SORA is to "prevent [] and protect[] against the commission of future criminal sexual acts by convicted sex offenders." Mich. Comp. Laws § 28.721a. The Michigan legislature specified in the statute that it had "determined that a person who has been convicted of committing an offense covered by this act poses a potential serious menace and danger to the health, safety, morals, and welfare of the people, and particularly the children, of this state." *Id*.

Nothing in the 2004 amendments altered the offenses with which the Romeo-and-Juliet offenders are charged. Instead, the legislative analysis of the 2004 amendments to the HYTA and the SORA indicates that the State was concerned that the SORA's registration requirements were overbroad and were reaching juveniles who did not pose a danger to the public because they had been charged with sex offenses that were in fact consensual sexual encounters. *Sex Offender Registration Revisions: Juveniles*, at 1. The result is that two youths who committed exactly the

same Romeo-and-Juliet offense on exactly the same day are treated differently if one was charged on September 30, 2004 and the other on October 1, 2004.

This kind of line-drawing, however, is the province of the legislature. *See Rummel v. Estelle*, 445 U.S. 263, 275 (1980) (holding that Texas's recidivist statute did not violate the Eighth Amendment and declining to engage in "extensive intrusion into the basic line-drawing process that is pre-eminently the province of the legislature when it makes an act criminal"). Legislation must, of necessity, take effect on some specific date. State legislatures not infrequently modify their statutory schemes to the benefit of the accused or the convicted by, among other things, reducing applicable penalties, increasing the rate of accrual of good-time credits, or exempting a class of offenders from some previously applicable consequence of conviction. In many instances, the legislature confers such benefits prospectively, thereby creating two classes of offenders distinguishable by only the date of offense, conviction, plea, or sentencing.

Where equal protection challenges have arisen to such legislative enactments, our sister circuits, applying rational-basis review, have generally upheld these prospectively applicable statutes. *See, e.g.*, *Foster v. Wash. State Bd. of Prison Terms & Parole*, 878 F.2d 1233, 1235 (9th Cir. 1989) (upholding a statute that prospectively established lower standard sentencing ranges); *Frazier v. Manson*, 703 F.2d 30, 34-35 (2d Cir. 1983) (upholding a statute prospectively increasing good-conduct credits that resulted in relatively longer terms of imprisonment for offenders sentenced before the effective date); *Colvin v. Estelle*, 506 F.2d 747, 748 (5th Cir. 1975) (upholding a statute that prospectively reduced the sentence for robbery by assault); *Comerford v. Massachusetts*, 233 F.2d 294, 295 (1st Cir. 1956) (same as *Frazier*).

We conclude that the legislative classification created by the effective date of the 2004 amendments to the SORA does not violate the Equal Protection Clause. "Statutes create many classifications which do not deny equal protection; it is only invidious discrimination which offends the Constitution." *New Orleans v. Dukes*, 427 U.S. 297, 304 n.5 (1976) (citation and quotation marks omitted). We will uphold a statute's classifications based on nonsuspect grounds against an equal protection challenge if "there is a rational relationship between the disparity of treatment and some legitimate government purpose." *Heller v. Doe*, 509 U.S. 312, 320 (1993). This court has previously concluded that the state's interests in protecting public safety and in aiding effective law enforcement are advanced by the SORA's registration requirements. *Cutshall*, 193 F.3d at 482-83. The 2004 amendments continue to advance public safety goals while simultaneously "weeding out" those youthful trainees who have been deemed least likely to reoffend. *See Sex Offender Registrations: Juveniles*, at 7 ("The main intent of the legislation is to weed out very young offenders who have a good chance of being rehabilitated and also [to] weed out teenage lovers.").

What the Michigan legislature has in effect done is adopt a gradual approach, eliminating the registration requirements for only those offenders assigned to youthful trainee status on or after October 1, 2004. The legislature's "gradual approach . . . is not constitutionally impermissible." *Cf. Dukes*, 427 U.S. at 305. Gradual elimination of the registration requirements advances Michigan's continuing legitimate interest in protecting public safety and aiding effective law enforcement. By exempting only post-October 2004 offenders, the legislature can monitor the situation to insure that low recidivism rates affirm their premise (that Romeo-and-Juliet offenders do not pose a danger to public safety) before deciding whether to expand the exemption to pre-October 2004 offenders. *Cf. Sex Offender Registrations: Juveniles*, at 7 ("It wouldn't be prudent to make the exemption too broad. Perhaps these changes should be reviewed to see if the target goal is being addressed and if necessary, the act can be amended at a later time to increase HYTA eligibility.").

Indeed, we note that the law grants limited relief to pre-2004 offenders. Once they have remained registered for ten years following discharge from youthful trainee status, such offenders

may petition the original sentencing court to waive their registration requirement. The district court observed that this "gives [the sentencing court] the opportunity to look at the recidivism of particular pre-2004 offenders before giving them the same benefits of post-2004 offenders." *Doe v. Sturdivant*, No. 05-70869, 2005 WL 2769000, at *8 (E.D. Mich. Oct. 25, 2005).

Although the 2004 amendments did not eliminate the obligation to register for all Romeo-and-Juliet offenders at once, "a statute is not invalid under the Constitution because it might have gone farther than it did." *Dukes*, 427 U.S. at 305 (quotation marks omitted). "[T]he judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines." *Id.* at 303. Indeed, "rational-basis review in equal protection analysis 'is not a license for courts to judge the wisdom, fairness, or logic of legislative choices.'" *Heller*, 509 U.S. at 319 (quoting *Beach Commc'ns*, 508 U.S. at 313).

Here, the Michigan legislature deliberately chose to make the amendment applicable only to those assigned to youthful trainee status on or after the effective date. The legislature may have decided, as a matter of policy, to proceed cautiously in lifting previously applicable registration requirements in the belief that Romeo-and-Juliet offenders would not recidivate, and with the intent to revisit the matter to assess whether, in fact, recidivism rates among this population were low. At the very least, we are unable to say that there is no rational relationship between the disparity in treatment and a legitimate governmental purpose. Without commenting on the "wisdom, fairness, or logic" of the legislative choice, we conclude that the classification created by the 2004 amendment survives rational-basis review.

## E.    Development of the record

The plaintiffs' final contention is that the district court erred by granting summary judgment to the State without allowing the plaintiffs more time to develop the record on the deprivations and harms that they have allegedly suffered as a result of the SORA registration requirement. In response, the State argues that the plaintiffs had the opportunity to present whatever evidence they chose, and that they cannot now complain of not having presented more. Under Rule 56(e) of the Federal Rules of Civil Procedure, the plaintiffs had the opportunity to oppose the State's motion for summary judgment with appropriate affidavits setting forth facts that would be admissible in evidence.

The plaintiffs in fact submitted 20 affidavits and the ACLU of Michigan submitted an additional one. There is no evidence in the record that the plaintiffs ever asked for more time to fully develop their opposition to the State's motion. The district court therefore had no opportunity to rule on the plaintiffs' belated claim through, for example, a motion for relief from judgment under Rule 60 of the Federal Rules of Civil Procedure. We deem this issue forfeited. To the extent that the issue is not forfeited, we conclude that it fails on the merits.

## III.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.