EVANDER, J.
John Doe I filed a nine-count amended complaint against the City of Palm Bay (“the City”) seeking a determination that Palm Bay City Ordinance 2005-76 (“the Ordinance”) is unconstitutional. The Ordinance prohibits registered sexual predators and registered sexual offenders from making deliveries to or performing work at any residence, including the curtilage thereof, any designated private or public school facilities or grounds, including school bus stops, or any day-care center, library, after-care center, park, playground, hospital, hospice facility, nursing home, adult day-care center, dwelling, domicile, or other place where children or vulnerable adults may reside or regularly congregate. The Ordinance also makes it unlawful for a business owner, manager, supervisor, or other employer to allow, direct, dispatch, or instruct a known sexual predator and/or sexual offender who has been convicted, of or found to have committed, or has pled nolo contendere or guilty to, regardless of adjudication, any violation or attempted violation of a sex-related crime or a violation of a similar law or of another jurisdiction, when the victim of the offense was a minor or vulnerable adult, to enter into or upon any of the aforestated locations. (The Ordinance is set forth in the Appendix to this opinion.) The trial court rejected Doe’s arguments and entered summary final judgment in favor of the City. We conclude that the expansive reach of the Ordinance resulting from the use of the word “may” in the phrase “or other place where children or vulnerable adults may reside nr regularly congregate,” violates the ex post facto clause of the United States Constitution.[1] However, we also conclude that the word “may” can be properly severed so as to enable the Ordinance to survive Doe’s ex post facto argument. We reject the other constitutional challenges to the Ordinance raised by Doe.
Doe is a registered plumber holding a valid occupational license with the Florida Department of Business and Professional Regulation. He owns his own plumbing business and maintains an office in Palm Bay. Doe is also a registered sex offender pursuant to section 943.0435, Florida Statutes (2005), as a result of a sexual battery charge to which he entered a nolo conten- *1215 dere plea in 1999. He contends that he has become subject to a substantial loss of income as a result of the City’s adoption of the Ordinance.
On appeal, Doe challenges the Ordinance on six grounds. We will address each argument separately.[2]
Procedural Due Process
Doe first argues that the Ordinance violates his procedural due process rights because he was not afforded the opportunity to prove that he does not pose a danger to the community. We find this argument to be without merit. In Connecticut Department of Public Safety v. Doe, 538 U.S. 1, 4, 123 S.Ct. 1160, 155 L.Ed.2d 98 (2003), the United States Supreme Court rejected a similar challenge to Connecticut’s sex offender registration law. The Court held that the fact the registered sex offender attempted to prove that he was currently not dangerous was “of no consequence” under Connecticut’s law. Id. at 7, 123 S.Ct. 1160. The offender’s conviction for one of the applicable enumerated crimes was the determining factor and, as the Supreme Court observed, the offender had already been afforded procedural safeguards to contest the underlying charge(s). Id. at 7-8, 123 S.Ct. 1160; see also Milks v. State, 894 So.2d 924, 927-28 (Fla.2005) (holding that procedural due process did not require evidentiary hearing to determine whether individuals subject to sexual predator classification presented danger to community).
Equal Protection
Doe next argues that the Ordinance violates his equal protection rights because there is no rational basis for him to be treated differently than other similarly situated persons who provide plumbing services in locations where children or vulnerable adults may be present. We disagree. Indeed, in McKune v. Lile, 536 U.S. 24, 33, 122 S.Ct. 2017, 153 L.Ed.2d 47 (2002), the United States Supreme Court stated that sex offenders constitute a serious threat in this nation and that once “convicted sex offenders reenter society, they are much more likely than any other type of offender to be rearrested for a new rape or sexual assault.” Thus, the imposition of restrictions to limit contact between sexual predators and/or sexual offenders and children or vulnerable adults is rationally related to a government’s interest in protecting its citizens from criminal activity. Doe v. Moore, 410 F.3d 1337, 1346-49 (11th Cir.2005) (holding that Florida’s sexual offender registration/notification laws were reviewed under rational basis test and that such laws were rationally related to state’s strong interest in preventing future sexual offenses and alerting local law enforcement and citizens to whereabouts of those that could reoffend).
Separation of Powers
It is Doe’s position that the Ordinance violates the separation of powers doctrine because it is the role of the judiciary, not a local government, to determine if a convicted person poses a “danger” to the community. We conclude that this argument is unpersuasive. The power to regulate sexual predators and sexual offenders has not been assigned exclusively to the judiciary. See Milks, 894 So.2d at 929 (holding that Florida’s Sexual Preda *1216 tors Act imposing registration and public notice requirements does not violate separation of powers doctrine; Act is exercise of Legislature’s public-policy-making function).
Preemption by State Licensing Laws
Because he has been licensed as a plumber by the state, Doe contends that a local government cannot restrict his ability to freely practice his trade as a plumber. We reject this argument. There are two ways that a local government ordinance can be inconsistent with state law and therefore unconstitutional. Phantom of Brevard, Inc. v. Brevard Cnty., 3 So.3d 309, 314 (Fla.2008). First, a local government cannot legislate in a field where the Legislature reserves that topic for regulation exclusively by the Legislature. Id. “Second, in a field where both the State and local government can legislate concurrently, a county cannot enact an ordinance that directly conflicts with a state statute.” Id.
Here, the Legislature has not reserved the regulation of licensed contractors exclusively to the State. Indeed, the Legislature has expressly provided for local government regulation:
Section 489.131 Applicability
(1) This part applies to all contractors, including, but not limited to, those performing work for the state or any county or municipality....
[[Image here]]
(3) Nothing in this part limits the power of a municipality or county:
(a) To regulate the quality and character of work performed by contractors through a system of permits, fees, and inspections which is designed to secure compliance with and aid in the implementation of state and local building laws.
(b) To enforce other laws for the protection of the public health and safety.
[[Image here]]
§ 489.131, Fla. Stat. (2005) (emphasis added).
Furthermore, there is no conflict between the state’s contractor licensing laws and the Ordinance. Although the Ordinance does restrict where Doe can conduct his plumbing business, his compliance with the Ordinance does not cause him to violate any condition of his licen-sure.
Substantive Due Process
Next, Doe raises a generic substantive due process attack against the Ordinance, claiming that it negates his right to travel, to family association, to contract, and to work. Regarding his right to contract argument, Doe was unable to demonstrate below that any of his contractual relationships had been impaired or destroyed as a result of the Ordinance’s enactment. We reject the remainder of Doe’s substantive due process arguments without discussion.
Ex Post Facto
Doe’s argument that the Ordinance is a retroactive punishment prohibited by the United States Constitution’s ex post facto clause merits greater discussion.[3] If the intent of the Palm Bay City Council was to impose additional punishment for Doe’s crime, then the Ordinance is unconstitutional. Smith v. Doe, 538 U.S. 84, 92, 123 *1217 S.Ct. 1140, 155 L.Ed.2d 164 (2003). If, however, the intention was to enact a regulatory scheme that is civil and nonpunitive, the Ordinance still must be examined to determine whether it is “so punitive either in purpose or effect as to negate [the City’s] intention to deem it ‘civil.’” Id. (quoting United States v. Ward, 448 U.S. 242, 248-49, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980)).
Whether a statutory scheme is civil or criminal is a question of statutory construction. Id. In the instant case, we have no difficulty concluding that the City’s intention in enacting the challenged Ordinance was civil in nature, to-wit: designed to protect children and vulnerable adults from sexual predators and sexual offenders.
To determine whether the Ordinance is so punitive either in purpose or effect as to negate the City’s intention to deem it “civil,” we consider the factors set forth in Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168-69, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963). Those factors are: (1) whether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as punishment; (3) whether it comes into play only on a finding of scienter; (4) whether its operation will promote the traditional aims of punishment — retribution and deterrence; (5) whether the behavior to which it applies is already a crime; (6) whether an alternative purpose to which it may rationally be connected is assignable for it; and (7) whether it appears excessive in relation to the alternative purpose assigned. Id.
In Smith, the United States Supreme Court provided guidance on how these factors should be applied in determining the validity of statutes designed to protect the public from convicted sex offenders, which is instructive for this appeal. There, the Court concluded that Alaska’s Sex Offender Registration Act was not violative of the ex post facto clause. Alaska’s statute had both a registration and a notification component. 538 U.S. at 106, 123 S.Ct. 1140. In addition to requiring sex offenders to register with local law enforcement agencies, the law authorized designated state officials to publish a sex offender’s name, alias(es), address, photograph, physical description, date of birth, place of employment, description, license and identification number of the offender’s motor vehicle(s), and information regarding the crime for which the offender had been convicted. Id. at 89-91, 123 S.Ct. 1140.
In analyzing the first two factors identified in Mendoza-Martinez, the Supreme Court concluded that Alaska’s statute did not impose any physical restraints, that the restrictions imposed were not historically considered to be punishment, and that the burden placed on sex offenders was less harsh than the sanction of occupational debarment which had previously been held by the Court to be nonpunitive. Id. at 97-100, 123 S.Ct. 1140.[4] The Supreme Court acknowledged that Alaska’s statute might deter future crimes (the fourth factor), but emphasized that the *1218 statute’s provisions were rationally connected to the nonpunitive purpose of public safety, which was advanced by alerting the public to the risk of sex offenders in the community (the sixth factor). Id. at 102-03, 123 S.Ct. 1140.
In examining whether Alaska’s statute was “excessive” (the seventh factor), the Smith court observed that the test was not to determine whether the legislature “has made the best choice possible to address the problem it seeks to remedy,” but whether the regulatory means chosen are reasonable in light of the nonpunitive objective. Id. at 105, 123 S.Ct. 1140.[5]
The type of employment restrictions contained in the Ordinance at issue here were not present in Smith. We do not believe this distinction significantly alters the analysis in Smith regarding the application of the second, fourth, and sixth Mendoza-Martinez factors. As to the second factor, the employment restrictions are not historically considered to be punishment. Regarding factors four and six, the Ordinance admittedly may advance the traditional goal of criminal laws to deter future crimes but, on the other hand, the Ordinance’s provisions (if the breadth of the Ordinance is lessened) are rationally connected to the nonpunitive purpose of public safety by prohibiting sexual predators and sexual offenders access and entry into the homes of customers, and other locations where children and vulnerable adults reside or regularly congregate.
However, the Ordinance’s employment restrictions do require a closer examination with regard to the application of Mendoza-Martinez’s first and seventh factors. As to the first factor, we conclude that the Ordinance’s employment restrictions involve a greater restraint than the registration/notification provisions upheld in Smith. However, these employment restrictions are still less severe than the sanction of occupational debarment, which the Supreme Court has previously held to be nonpunitive. See id. at 100, 123 S.Ct. 1140.
As to the seventh factor, we believe that, as written, the breadth of the restrictions on employment opportunities supports a finding that the ordinance is excessive in relation to its stated purpose of public safety. In identifying the locations in which a sexual predator or sexual offender is prohibited from making deliveries or performing work, the Ordinance includes any “other place where children or vulnerable adults may reside or regularly congregate.” This language is broad enough to apply to virtually every residence in the City, as well as a vast number of businesses, regardless of whether children or vulnerable adults are likely to be present.
We would observe, by contrast, the narrower and more clearly defined employment restrictions imposed by the Legislature on sexual predators:[6]
A sexual predator ... who works, whether for compensation or as a volunteer, at any business, school, child care facility, park, playground, or other place where children regularly congregate, *1219 commits a felony of the third degree, ....
§ 775.21(10)(b), Fla. Stat. (2014).
Here, because of the inclusion of the word “may,” the Ordinance’s employment restrictions would apply to innumerable locations where it cannot be reasonably argued that the stated intent of protecting children and vulnerable adults from registered sexual predators and sexual offenders would be furthered.
Thus, we conclude that the retroactive application of the Ordinance, as written, would be unconstitutional. However, this does not end our analysis. Where a part of a statute or ordinance is declared unconstitutional, the remainder of the act will be permitted to stand provided: (1) the unconstitutional provisions can be separated from the remaining valid provisions; (2) the legislative purpose expressed in the valid provisions can be accomplished independently of those that are void; (3) the good and the bad features are not so inseparable in substance that it can be said that the legislative body would have passed the one without the other; and (4) an act complete in itself remains after the invalid provisions are stricken. Cramp v. Bd. of Pub. Instruction of Orange Cnty., 137 So.2d 828, 830 (Fla.1962).
The fact that an invalid portion of an ordinance is not self-contained in a separate section does not preclude a court from applying the severability rule to strike the invalid portion and preserve the rest of the enactment. Frazier ex rel. Frazier v. Winn, 535 F.3d 1279, 1283 (11th Cir.2008); see also Hershey v. City of Clearwater, 834 F.2d 937 (11th Cir.1987) (“The law permits us to strike the words ‘or sleep,’ if unconstitutional, from the ordinance. We hold that the ordinance after the severance of these words is constitutional and that there was probable cause to arrest appellant Hershey under this reformulated ordinance for lodging in a vehicle in a public area.”); State v. Williams, 343 So.2d 35, 38 (Fla.1977) (“Therefore, by deleting the last sentence of subsection (1) (that portion of the statute which alone creates the constitutional invalidity,) the remainder of Section 27.56, Florida Statutes, is hereby held constitutionally valid.”).
Here, striking the word “may” from the last portion of Sections 2(A) and 2(B) of the Ordinance comports with the requirements permitting severance set forth in Cramp. Additionally, our decision is consistent with Section 5 of the Ordinance:
If any portion, clause, phrase, sentence or classification of this ordinance is held or declared to be either unconstitutional, invalid, inapplicable, inoperative or void, then such declaration shall not be construed to affect other portions of the ordinance; it is hereby declared to be the express opinion of the City Council of the City of Palm Bay that any such unconstitutional, invalid, inapplicable, inoperative or void portion or portions of this ordinance did not induce its passage, and that without the inclusion of any such portion or portions of this ordinance, the City Council would have enacted the valid constitutional portions thereof.
In summary, we conclude that the word “may” can be properly severed from the last portion of Sections 2A and 2B of the Ordinance and, by this Court doing so, the Ordinance survives Doe’s ex post facto challenge. The decision of the trial court is otherwise affirmed.
AFFIRMED, in part; REVERSED, in part.
PALMER and ORFINGER, JJ., concur.

*1220
APPENDIX

The Ordinance, in its entirety, reads as follows:
ORDINANCE NO. 2005-76
AN ORDINANCE OF THE CITY OF PALM BAY, BREVARD COUNTY, FLORIDA, PROHIBITING BUSINESSES AND EMPLOYERS FROM ALLOWING A SEXUAL PREDATOR AND/OR OFFENDER, WHO HAS BEEN CONVICTED OF OR FOUND TO HAVE COMMITTED, OR HAS PLED NOLO CONTENDERE OR GUILTY TO, REGARDLESS OF ADJUDICATION, ANY VIOLATION, OR ATTEMPTED VIOLATION, OF A SEX-RELATED CRIME AS DEFINED BY THIS ORDINANCE, OR A VIOLATION OF A SIMILAR LAW OF ANOTHER JURISDICTION, WHEN THE VICTIM OF THE OFFENSE WAS A MINOR OR VULNERABLE ADULT, TO ENTER UPON ANY BUSINESS, SCHOOL, DAY CARE CENTER, PARK, PLAYGROUND, DWELLING, DOMICILE, OR OTHER PLACE WHERE CHILDREN OR VULNERABLE ADULTS MAY RESIDE OR REGULARLY CONGREGATE, TO MAKE DELIVERIES OR PERFORM WORK; PROVIDING FINDINGS AND INTENT; PROVIDING DEFINITIONS; PROVIDING FOR THE REVOCATION OF VIOLATORS’ OCCUPATIONAL LICENSE; PROVIDING FOR PENALTIES; PROVIDING FOR THE REPEAL OF ORDINANCES OR PARTS OF ORDINANCES IN CONFLICT HEREWITH; PROVIDING FOR INCLUSION INTO THE CITY OF PALM BAY CODE OF ORDINANCES; PROVIDING FOR SEV-ERABILITY; PROVIDING FOR AN EFFECTIVE DATE.
WHEREAS, there is clear evidence of many occurrences in Florida and elsewhere, of convicted sexual predators and sexual offenders repeating the unlawful acts for which they were originally convicted, and
WHEREAS, the recidivism rate for sexual predators and sexual offenders is alarmingly high, especially for those who committed their crimes on children, and
WHEREAS, the population of the City of Palm Bay is increasing rapidly, with a significant portion of that population consisting of families with small children, elderly, mentally and physically handicapped and otherwise vulnerable adults, and
WHEREAS, sexual predators and sexual offenders present an extreme threat to the public health and safety and are extremely likely to use physical violence and to repeat their offenses, and
WHEREAS, the City Council of the City of Palm Bay desires to provide the maximum protection of persons in the City against sexual predators and sexual offenders, and
WHEREAS, studies on the subject have shown most sexual predators and sexual offenders commit many offenses, have many more victims than are ever reported and are prosecuted for only a fraction of their crimes, making the cost of sexual predator and sexual offenders victimization to society at large, while incalculable, clearly exorbitant, and
WHEREAS, it is the intent of this provision to serve the City’s compelling interest to promote, protect, and improve the health, safety and welfare of the citizens of the City, and
WHEREAS, the City Council adopts the findings and intent of the State Legislature as set forth in Sections 394.910, 775.21, and 944.606, Florida Statutes, *1221 that apply to sexual predators, particularly with the intent, inter alia, to prohibit sexual predators from working with children, either for compensation or as volunteers.
WHEREAS, the City has a compelling interest in protecting the public from sexual predators and sexual offenders and in protecting children and vulnerable adults from sex-related criminal acts and predatory activity, and there is sufficient justification for prohibiting sexual predators and sexual offenders access and entry into the homes of clients, and other locations that children and vulnerable adults are commonly located, reside or congregate,
WHEREAS, the City Council finds that it is in the best interest of the public to release certain information to the public when a sexual predator and sexual offenders moves into the City, and
WHEREAS, Sections 947.1405(7)(a)(l) and (2), and Sections 948.30(l)(a) and (b), Florida Statutes, establish a curfew and provide for one thousand (1,000) foot residence prohibitions from specified locations for certain sexual offenders thereby manifesting a need to protect the public from them, and
WHEREAS, Article VIII, Section 2(b), Florida Constitution, and Section 166.021, Florida Statutes, provide the City authority to protect the health, safety, and welfare or its residents, and
WHEREAS, the designation of a person as a sexual offender is neither a sentence nor punishment, but simply a status resulting from a conviction of certain crimes.
NOW, THEREFORE, BE IT ENACTED BY THE CITY COUNCIL OF THE CITY OF PALM BAY, BRE-VARD COUNTY, FLORIDA, as follows:
SECTION 1. Definitions.
The following words, terms, and phrases, when used in this ordinance, shall have the meanings ascribed to them in this section, except where the context clearly indicates a different meaning:
EMPLOYER shall mean any person or entity who conducts business within the City limits of the City of Palm Bay.
OCCUPATIONAL LICENSE shall mean an occupational license issued by the City of Palm Bay.
SEX-RELATED CRIME shall mean a violation of Sections 787.01, 787.02, or 787.025, Florida Statutes, where the victim is a minor and the defendant is not the victim’s parent; or, Sections 794.011(2), (3), (4), (5), or (8), 794'.05, 796.03, 800.04, 827.071, 847.0133, or 847.1045, Florida Statutes, or a violation of a similar law of another jurisdiction.
SEXUAL OFFENDER shall have the same meaning ascribed in Sections, 943.0435, 944.606, and 944.607, Florida Statutes.
SEXUAL PREDATOR shall have the same meaning ascribed in Sections 775.21, 944.606, and 944.607, Florida Statutes.
VULNERABLE ADULT shall mean any adult who lacks the capacity to give consent or is physically or mentally restricted, incapacitated, or restrained to the extent as to require periodic or constant supervision by another person.
WORK shall mean any and all repairs, labor, services or any other activity requested by the property owner or lawful occupant of a property.
SECTION 2. Prohibition.
A. It is unlawful for any business owner, manager, supervisor or employer *1222 to allow, direct, dispatch, or instruct a known sexual predator and/or sexual offender who has been convicted of or found to have committed, or has pled nolo contendere or guilty to, regardless of adjudication, any violation, or attempted violation of a sex-related crime or a violation of a similar law of another jurisdiction, when the victim of the offense was a minor or vulnerable adult, to enter into or upon any residence, including the curtilage thereof, any designated private or public school facilities or grounds, including school bus stops, or any day-care center, library, after-care center, park, playground, hospital, hospice facility, nursing home, adult daycare center, dwelling, domicile, or other place where children or vulnerable adults may reside or regularly congregate, to make deliveries or perform work.
B.It is unlawful for any person who is a registered sexual predator or a registered sexual offender to enter into or upon any residence, including the curti-lage thereof, any designated private or public school facilities or grounds, including school bus stops, or any day-care center, library, after-care center, park, playground, hospital, hospice facility, nursing home, adult day-care center, dwelling, domicile, or other place where children or vulnerable adults may reside or regularly congregate, to make deliveries or perform work.
SECTION 3. Penalties.
A. A person or entity who violates this ordinance shall be guilty of a misdemeanor of the second degree punishable as provided in Sections 775.082 and 775.088, Florida Statutes.
B. For a second or subsequent conviction of a violation of this ordinance, such person shall be guilty of a misdemeanor of the first degree punishable as provided in Sections 775.082 and 775.083, Florida Statutes. These penalties are in addition to any -violation of probation or other offenses specified by statute or ordinance.
C. In addition to the above-stated penalties, for a third or subsequent violation of this ordinance, the City of Palm Bay shall revoke the occupational license of any person or entity to whom such license was issued.
D. Upon the third or subsequent violation of this ordinance, by a person or entity without a valid occupational license issued by the City, the City Attorney shall petition a court of competent jurisdiction for injunctive relief for the purpose of restraining the violator from conducting business within the City of Palm Bay.
SECTION 4. All ordinances or parts of ordinances in conflict herewith are hereby repealed and all ordinances or parts of ordinances not in conflict herewith are hereby continued in full force and effect.
SECTION 5. If any portion, clause, phrase, sentence or classification of this ordinance is held or declared to be either unconstitutional, invalid, inapplicable, inoperative or void, then such declaration shall not be construed to affect other portions of the ordinance; it is hereby declared to be the express opinion of the City Council of the City of Palm Bay that any such unconstitutional, invalid, inapplicable, inoperative or void portion or portions of this ordinance did not induce its passage, and that without the inclusion of any such portion or portions of this ordinance, the City Council would have enacted the valid constitutional portions thereof.
SECTION 6. It is the intention of the City Council of the City of Palm Bay *1223 that the provisions of this ordinance shall be made a subchapter of Chapter 134 of the City of Palm Bay Code of Ordinances and the sections may be renumbered to accomplish such intention.
SECTION 7. The provisions "within this ordinance shall take effect immediately upon the enactment date.

. "No State shall ... pass any ... ex post facto Law....” Art. I, § 10, cl. 1, U.S. Const.

. Below, Doe challenged the Ordinance on a seventh ground, to-wit: that the Ordinance was preempted by Florida’s statutes pertaining to registered sexual predators and/or sexual offenders. However, Doe abandoned this argument by failing to raise it on appeal and, accordingly, we decline to address it. See Chamberlain v. State, 881 So.2d 1087, 1103 (Fla.2004) (stating that failure to advance argument on appeal concerning issue raised below constitutes abandonment).

. Although Doe's brief mentioned Florida’s ex post facto clause, he presented no argument concerning that provision of the Florida Constitution. See Shere v. State, 742 So.2d 215, 217 n. 6 (Fla.1999) (noting that issues raised in appellate brief without argument are deemed abandoned).

. See, e.g., De Veau v. Braisted, 363 U.S. 144, 158-60, 80 S.Ct. 1146, 4 L.Ed.2d 1109 (1960) (upholding New. York statute prohibiting convicted felons who had not been subsequently pardoned and/or received certificate of good conduct from soliciting or receiving any dues on behalf of waterfront union; statute was regulatory, not punitive, in nature; barring convicted felons from certain employments was “familiar legislative device” to ensure against corruption in specified, vital areas); Hawker v. People of New York, 170 U.S. 189, 18 S.Ct. 573, 42 L.Ed. 1002 (1898) (upholding, against ex post facto challenge, state law prohibiting convicted felons from practicing medicine; statute constituted proper exercise of power to protect public health).

. The Court gave little consideration to the other two factors set forth in Mendoza-Martinez, stating:
The two remaining Mendoza-Martinez factors. — whether the regulation comes into play only on a finding of scienter and whether the behavior to which it applies is already a crime — are of little weight in this case. The regulatory scheme applies only to past conduct, which was, and is, a crime.
Smith, 538 U.S. at 105, 123 S.Ct. 1140.

. The Legislature has chosen not to impose similar employment restrictions on registered sexual offenders.