BRYANT, Judge, dissenting.
I firmly believe that unless the statutes enacting North Carolina's satellite-based monitoring (SBM) program are deemed to be unconstitutional on their face, the State's burden of proof to show that SBM is a reasonable search in accordance with the Fourth Amendment is not so high as the majority has set forth. By requiring the State to establish an interest in monitoring defendant and the efficacy of the *677 SBM program beyond that which has been defined and codified by our General Assembly, the majority asks the State to meet a burden of proof greater than our General Assembly envisioned as necessary and greater than Fourth Amendment jurisprudence requires. For these reasons, I respectfully dissent.
The Fourth Amendment sets forth "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "The reasonableness of a search depends on the totality of the circumstances, including the nature and purpose of the search and the extent to which the search intrudes upon reasonable privacy expectations." Grady v. North Carolina , 575 U.S. ----, ----, 135 S.Ct. 1368, 1371, 191 L.Ed.2d 459, 462 (2015) (citing Samson v. California , 547 U.S. 843, 126 S.Ct. 2193, 165 L.Ed.2d 250 (2006) ; Vernonia School Dist. 47J v. Acton , 515 U.S. 646, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995) ). "Whether a search is reasonable 'is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.' " Samson , 547 U.S. at 848, 126 S.Ct. at 2197, 165 L.Ed.2d at ---- (citing United States v. Knights , 534 U.S. 112, 118-19, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001) ).
Defendant's Privacy
"The Fourth Amendment does not protect all subjective expectations of privacy, but only those that society recognizes as 'legitimate.' "
*29 Vernonia Sch. Dist. 47J , 515 U.S. at 654, 115 S.Ct. at 2391, 132 L.Ed.2d at 575 ; see, e.g., Samson , 547 U.S. 843, 126 S.Ct. 2193, 165 L.Ed.2d 250 (upholding warrantless search of parolee); Knights , 534 U.S. 112, 122 S.Ct. 587, 151 L.Ed.2d 497 (upholding warrantless search of probationer's home based on reasonable suspicion and condition of probation); Griffin v. Wisconsin , 483 U.S. 868, 875-80, 107 S.Ct. 3164, 3169-72, 97 L.Ed.2d 709, 718-22 (1987) (upholding warrantless search of probationer's home based on special needs).
The physical limitations imposed by the SBM system's ET-1 monitoring device are minimal: it weighs 8.7 oz., can be worn under socks, can be worn in the water, does not prohibit physical activity or travel, but must be charged daily. The majority deems these limitations "more inconvenient than intrusive," and I agree. The issue is to what degree continuous monitoring-which generates a history of the wearer's movements-intrudes upon a legitimate expectation of privacy.
As to this defendant, the majority concludes that his expectation of privacy is diminished as compared to that of a law-abiding citizen. I agree. Due to defendant's enrollment in North Carolina's sex offender *678 registry,[8] defendant's name, sex, address, physical description, picture, conviction date, offense for which registration was required, sentence imposed as a result of conviction, and registration status are made available to the public. N.C. Gen. Stat. § 14-208.10(a).
Next, I consider the State's interests.
Legitimate Governmental Interest
"Sex offenders are a serious threat in this Nation." McKune v. Lile , 536 U.S. 24, 32, 122 S.Ct. 2017, 153 L.Ed.2d 47 (2002) (plurality opinion). "[T]he victims of sex assault are most often juveniles," and "[w]hen convicted sex offenders reenter society, they are much more likely than any other type of offender to be re-arrested for a new rape or sexual assault." Id. , at 32-33, 122 S.Ct. 2017 .... [E ]very ... State, has responded to these facts by enacting a statute designed to protect its communities from sex offenders and to help apprehend repeat sex offenders .
Connecticut Dep't of Pub. Safety v. Doe , 538 U.S. 1, 4, 123 S.Ct. 1160, 1162-63, 155 L.Ed. 2d 98, 103 (2003).
The U.S. Supreme Court has noted "[t]here is evidence that recidivism rates among sex offenders are higher than the average for other types of criminals" and that "[t]here is also conflicting evidence on the point." United States v. Kebodeaux , 570 U.S. 387, 395, 133 S.Ct. 2496, 2503, 186 L.Ed.2d 540, 549 (2013) (citations omitted). Our General Assembly has determined that those convicted of specific sex offenses or those who have multiple convictions for specific sex offenses pose a danger to the public safety and welfare that is to be guarded against in the form of public registries for sex offenders and in some categorical cases, SBM programs available to law enforcement agencies.
In the enabling language of our Sex Offender and Public Protection Registration Programs, our General Assembly stated the purpose of these programs.
The General Assembly recognizes that sex offenders often pose a high risk of engaging in sex offenses even after being released from incarceration or commitment and *679 that protection of the public from sex offenders is of paramount governmental interest.
The General Assembly also recognizes that persons who commit certain other types of offenses against minors ... pose significant and unacceptable threats to the public safety and welfare of the children in this State and that the protection of those children is of great governmental interest. Further, the General Assembly recognizes that law enforcement officers' efforts to protect communities, conduct investigations, and quickly apprehend offenders who commit sex offenses or certain offenses *30 against minors are impaired by the lack of information available to law enforcement agencies about convicted offenders who live within the agency's jurisdiction. Release of information about these offenders will further the governmental interests of public safety so long as the information released is rationally related to the furtherance of those goals.
Therefore, it is the purpose of this Article to assist law enforcement agencies' efforts to protect communities by requiring persons who are convicted of sex offenses or of certain other offenses committed against minors to register with law enforcement agencies, to require the exchange of relevant information about those offenders among law enforcement agencies, and to authorize the access to necessary and relevant information about those offenders to others as provided in this Article.
N.C. Gen. Stat. § 14-208.5 (2017).
In this effort, the General Assembly directed the Division of Adult Correction and Juvenile Justice of the Department of Public Safety to establish a SBM program to monitor three categories of sex offenders .
Any offender who is convicted of a reportable conviction as defined by G.S. 14-208.6(4) [ (an offense against a minor or a sexually violent offense) ] and who is required to register under Part 3 [ ("Sexually Violent Predator Registration Program") ] of Article 27A of Chapter 14 of the General Statutes because the defendant is classified as a sexually violent predator, is a recidivist , or was convicted of an aggravated offense as those terms are defined in G.S. 14-208.6.
*680 Id. § 14-208.40(a)(1) (emphasis added). Additionally, "[i]f the court finds that the offender ... is a recidivist ..., the court shall order the offender to enroll in a satellite-based monitoring program for life." Id. § 14-208.40A(c) (emphasis added).[9] Defendant does not challenge on appeal the legitimacy of these governmental interests.
The majority concludes that the State failed to put forth any evidence establishing a specific interest in monitoring defendant and the efficacy of the SBM program. I submit that our General Assembly has categorically determined and described those with a threat of reoffending significant enough to warrant SBM. The SBM statutes specifically describe three categories of sex offenders the program is designed to monitor. See id. § 14-208.40(a). So long as the State presents sufficient evidence to establish that a defendant meets the requisite statutory definitions and criteria for a court to order the defendant be enrolled in our SBM program, the State has presented sufficient evidence to establish a specific interest in monitoring the defendant.
During the bring-back hearing, the State presented evidence that defendant's convictions were reportable, sexually violent convictions, and that defendant met the statutory definition of a recidivist. And it should be noted that upon making these findings, the trial court was bound by statute to order defendant to enroll in SBM for life. See id. § 14-208.40A(c) ("If the court finds that the offender ... is a recidivist, ... the court shall order the offender to enroll in a satellite-based monitoring program for life.").
Defendant's prior record of reportable, sexually violent convictions, as well as his status as a recidivist in conjunction with our General Assembly's codified categorical assessment that offenders who meet those criteria are to be enrolled in our SBM program to better assist law enforcement agencies' efforts to protect communities, see id. § 14-208.40(a)(1), establishes the State's interest in monitoring this particular defendant.
Weighing Expectation Against Interest
The question is whether the State's interest in protecting the public from defendant, a recidivist sex offender who qualifies for participation in our State's SBM program, outweighs defendant's diminished expectation of privacy. I believe that it does.
*681 The evidence before the trial court as to defendant was as follows: In 1996, defendant *31 pled no contest to second-degree sex offense (a Class C felony); and in 2006, defendant was indicted on charges of statutory rape and indecent liberties with a child before he pled guilty to taking indecent liberties with a child (a Class F felony) and admitted that the victim was impregnated as a result of his actions.[10] The trial court found both offenses to be "sexually violent offenses," as defined by N.C. Gen. Stat. § 14-208.6, and further found defendant met the definition of a "recidivist" under the same statute. See id. § 14-208.6(2b), (5). By statute, the trial court was compelled to order defendant's enrollment in our SBM program. See id. § 14-208.40A(c) ("If the court finds that the offender ... is a recidivist, ... the court shall order the offender to enroll in a satellite-based monitoring program for life."). Therefore, our General Assembly had determined that the State's burden of proof is not so high as the majority would require.[11]
Weighing the degree to which participation in the SBM program intrudes upon defendant's privacy and, on the other hand, the degree to which SBM participation promotes legitimate governmental interests-the prevention of criminal conduct or the apprehension of defendant should he reoffend-the trial court's determination that the intrusion upon defendant's privacy was outweighed by the legitimate governmental interest was supported by the evidence in this case. Given the totality of the circumstances-including the nature of the search (the collection of location data for a recidivist sex offender), the purpose of the search (to protect the public against sex offenses), and the extent to which the search intrudes upon defendant's diminished expectations of privacy (an accumulated history of defendant's movements[12] )-I believe defendant's participation in the SBM program is reasonable and in accordance with our statutory scheme. Accordingly, I would affirm the trial court's order.

Defendant's prior record reflects a 2004 conviction for failure to register as a sex offender. Also, defendant's 1996 and 2006 convictions, both determined to be sexually violent offenses qualify him for enrollment in the Sex Offender and Public Protection Registration Program. See N.C. Gen. Stat. § 14-208.6A.

"An offender ... who is required to submit to satellite-based monitoring for the offender's life may file a request for termination of monitoring requirement with the Post-Release Supervision and Parole Commission." N.C. Gen. Stat. § 14-208.43(a) (2017). Thereafter, while required initially, SBM for life does not necessarily mean one is monitored for life.

Though not germane to the statutory scheme for SBM enrollment, it should be noted that in 2004, defendant was convicted of failing to register as a sex offender.

The majority notes that the State "failed to present any evidence of [the] efficacy [of the SBM program which had been in effect for approximately ten years] in furtherance of its undeniably legitimate interest," and that defendant presented evidence rebutting the assumption of the high rate of recidivism by sex offenders. While this may be a valid legislative argument, I do not believe it to be a persuasive argument that defendant's participation in the SBM program, when viewed as a search, was unreasonable.

While there may be an argument that over a long course of time accumulated location data of an individual revealing no criminal conduct will become more burdensome than the Fourth Amendment can tolerate, I do not believe we need to address this argument at this point. Presently, defendant has been convicted of two sexually violent offenses and designated a recidivist and does not have a lengthy history devoid of assaults on minors.