Robert L. Hinkle, United States District Judge
This case presents a First Amendment challenge to a Florida statute requiring *1255 convicted sex offenders to notify the Florida Department of Law Enforcement of their internet identifiers. This order upholds the statute in substantial part but protects the right to anonymous speech by prohibiting FDLE from publicly disclosing information of a kind that FDLE has compiled but never publicly disclosed and that no member of the public has ever requested.
I. Background
Florida maintains a sex offender registry. An individual who has been convicted of a qualifying sex offense must register with FDLE and must provide specified information. The information includes, among other things, the registrant's name, physical address, email addresses, and, subject to exceptions, the registrant's internet identifiers-names the registrant uses to communicate directly with other internet users. Failure to comply with these requirements is a felony.
FDLE maintains a publicly available website with each registrant's name and physical address. A user of the website thus may determine whether an individual is a registered sex offender and, if so, the registrant's physical address. The publicly available website lists email addresses and internet identifiers that have been disclosed by registrants, but the website does not match them up-the website does not indicate which registrant is associated with which email address or internet identifier. FDLE makes that information-the identity of the registrant associated with any given email address or internet identifier-available to law enforcement officers for use in investigating crimes. FDLE policy allows disclosure of that information to members of the public only on written request, not over the internet. No member of the public has ever made a written request for that information, so FDLE has never publicly disclosed it. See Def.'s Mot. Summ. J., ECF No. 77, at 6 ; Coffee decl., ECF No. 77-1, at ¶ 36 ; Rough Tr. of Summ. J. Hr'g at 50, 52.
The plaintiffs are registered sex offenders. They filed this action against the Commissioner of FDLE in his official capacity. The plaintiffs seek declaratory and injunctive relief.
The plaintiffs assert the requirement to notify FDLE of their internet identifiers violates the First Amendment because the requirement burdens their protected speech, deters them from engaging in protected speech, and deprives them of the right to anonymous speech. The plaintiffs also assert the statute's description of which internet identifiers must be registered is unconstitutionally vague.
FDLE asserts the plaintiffs lack standing and are wrong on the merits.
The parties have filed cross-motions for summary judgment. The motions have been fully briefed and orally argued.
II. The Statute
The Florida sex-offender registry statute imposes requirements on individuals with qualifying sex-offense convictions who reside in Florida or visit for as little as three days in a calendar year. One requirement is to "register all electronic mail addresses and Internet identifiers" within 48 hours after "using" them. Fla. Stat. § 943.0435(4)(e) 1.
An internet identifier is "any designation, moniker, screen name, username, or other name used for self-identification to send or receive social Internet communication." Id. § 775.21(2)(j) (incorporated into § 943.0435 by § 943.0435(1)(e) ). For convenience, this order sometimes uses the single word "username" to mean the same thing as "designation, moniker, screen name, username, or other name used for *1256 self-identification." The statute's use of the longer list is apparently intended to be comprehensive, but "username," standing alone, would probably achieve the same result.
A social internet communication is "any communication through a commercial social networking website ... or application software," with three exceptions: (1) "[c]ommunication for which the primary purpose is the facilitation of commercial transactions involving goods or services"; (2) "[c]ommunication on an Internet website [whose] primary purpose ... is the dissemination of news"; and (3) "[c]ommunication with a governmental entity." Id. § 775.21(2)(m) (incorporated into § 943.0435 by § 943.0435(1)(e) ).
A commercial social networking website is "a commercially operated Internet website that allows users to create web pages or profiles that provide information about themselves and are available publicly or to other users and that offers a mechanism for communication with other users, such as a forum, chat room, electronic mail, or instant messenger." Id. § 943.0437(1) (incorporated into § 775.21 by § 775.21(2)(m), which is in turn incorporated into § 943.0435 by § 943.0435(1)(e) ).
Application software is "any computer program designed to run on a mobile device such as a smartphone or tablet computer, that allows users to create web pages or profiles that provide information about themselves and are available publicly or to other users, and that offers a mechanism for communication with other users through a forum, a chatroom, electronic mail, or an instant messenger." Id. § 775.21(2)(m) (incorporated into § 943.0435 by § 943.0435(1)(e) ).
At bottom, a good summary is this. The statute requires registration of a sex offender's email addresses and any username a sex offender uses in connection with a communication over the internet directly with another user, with the following exceptions. A username need not be registered based only on a communication whose primary purpose is to facilitate a commercial transaction involving goods or services, or a communication over a website whose primary purpose is the dissemination of news, or a communication with a governmental entity. And a username need not be registered based only on its use on a website or application that does not allow users to create web pages or profiles as described in the statute.
For the most part, the summary set out in the preceding paragraph derives from the plain language of the statute. But the limitation to communications directly with another user is less clear. That limitation is mandated by three considerations.
First, while not explicit, the statutory language strongly supports the limitation. The statute defines an internet identifier as a "designation, moniker, screen name, username, or other name used for self-identification to send or receive social Internet communication. " Id. § 775.21(2)(j) (emphasis added). The italicized phrase is most naturally understood as a reference to communications between users; that is what makes a communication "social" and provides an occasion for "self-identification." Further, the registration requirement is triggered only by communications through a commercial social networking website or application software that "offers a mechanism for communication with other users, such as a forum, chat room, electronic mail, or instant messenger." Id. § 943.0437(1). Requiring that a website or app provides a platform for direct user-to-user communications is not the same as requiring the platform to be used, but the provision does make clear the statute's focus on direct user-to-user communications.
*1257 It is those communications, after all, that pose the risk of sex offenses that the statute aims to reduce.
Second, any doubt on this score should be resolved by the rule of lenity, under which ambiguities in a criminal statute-this is one-that require a court to guess at the statute's meaning must be resolved in a defendant's favor. See, e.g., Muscarello v. United States , 524 U.S. 125, 138, 118 S.Ct. 1911, 141 L.Ed.2d 111 (1998) ; United States v. Belfast , 611 F.3d 783, 813-14 (11th Cir. 2010).
Third, the FDLE Commissioner, represented in this litigation by the Attorney General of Florida, has agreed-indeed, has affirmatively asserted-that the requirement to register an internet identifier is triggered only by direct user-to-user communications. See Def.'s Mot. Summ. J., ECF No. 77, at 12 ("The context of the registration provisions makes clear that they relate solely to actual online communications by a registered sexual offender with another person."); Rough Tr. of Summ. J. Hr'g at 48 (agreeing, after specific questioning, that the requirement to register an internet identifier "only applies when there is a communication with another user"). The state's solemn representation that the statute is so limited confirms that this reading of the statute is correct.
III. Standing
In Lujan v. Defenders of Wildlife , 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992), the Supreme Court said the "irreducible constitutional minimum of standing contains three elements." First, the plaintiff "must have suffered an injury in fact-an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." Id. (internal quotation marks and citations omitted). Second, "there must be a causal connection between the injury and the conduct complained of-the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." Id. (internal quotation marks, ellipses, and brackets omitted). Third, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Id. (internal quotation marks omitted).
That the plaintiffs meet these requirements is clear. The plaintiffs have been convicted of qualifying sex offenses. They are on the Florida sex-offender registry. The statutory requirement to register email addresses and usernames applies to the plaintiffs themselves. If, as the plaintiffs assert, the requirement is unconstitutional, the requirement to register is imposing on them an injury in fact-an injury that is concrete and particularized, actual and not just imminent but ongoing. The causal connection between the statute and the injury is certain; the challenged statute is the sole cause of the injury. And it is not only likely but certain, or nearly so, that a favorable decision will redress the injury.
In asserting the contrary, the Commissioner says no member of the public has ever made a written request to FDLE for a sex offender's email address or username, so the information has never been made public. See Def.'s Mot. Summ. J., ECF No. 77, at 6 ; Coffee decl., ECF No. 77-1, at ¶ 36 ; Rough Tr. of Summ. J. Hr'g at 50, 52. This does not mean, though, that the requirement to provide the information to FDLE inflicts no injury in fact. First, the steps required to provide the information take time; this imposes a burden that constitutes an injury in fact, even if no member of the public ever asks for the information. Second, and more importantly, the plaintiffs have provided unrebutted *1258 testimony that the requirement to provide the information to FDLE has deterred them from using the internet as extensively as they otherwise would have; this, too, is an injury in fact, even if no member of the public ever asks for the information. Third, individuals have an interest in keeping information confidential not just from the public but also from FDLE; this loss of confidentiality, too, imposes an injury in fact, even if no member of the public ever asks for the information.
That no member of the public has ever asked for the information does not defeat standing, but this does make clear that the state's interest in making the information publicly available is zero or close to zero. This goes to the merits, as addressed below.
IV. Intermediate Scrutiny Applies
Sex-offender registries exist in every state and have been held constitutional even when applied retroactively to offenders who were convicted before registration was required. See Smith v. Doe I , 538 U.S. 84, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003) ; see also Conn. Dep't of Pub. Safety v. Doe , 538 U.S. 1, 6-7, 123 S.Ct. 1160, 155 L.Ed.2d 98 (2003). Even so, restrictions on a sex offender's access to the internet implicate the First Amendment. In Packingham v. North Carolina , --- U.S. ----, 137 S.Ct. 1730, 198 L.Ed.2d 273 (2017), the Supreme Court held unconstitutional a statute that prohibited sex offenders from accessing a broad array of internet sites.
Packingham does not dictate the outcome here because the challenged Florida statute is different. This statute does not prohibit any speech at all. A Florida registrant may say anything to anyone over the internet or otherwise without violating this statute. A registrant may access information of any kind from any source, including over the internet, without violating this statute.
Still, by requiring registration of email addresses and internet identifiers, the statute burdens speech. This subjects the statute to scrutiny under the First Amendment. The Commissioner says the proper level of scrutiny is intermediate. The plaintiffs say the statute is subject to strict scrutiny.
A state statute survives strict scrutiny only if the statute "furthers a compelling state interest and is narrowly tailored to achieve that interest." Reed v. Town of Gilbert , --- U.S. ----, 135 S.Ct. 2218, 2231, 192 L.Ed.2d 236 (2015). To survive intermediate scrutiny, a statute must be "narrowly tailored to serve a significant governmental interest" and "leave open ample alternative channels for communication of the information" at issue. Ward v. Rock Against Racism , 491 U.S. 781, 791, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989). Narrow tailoring does not mean perfect tailoring, a goal that is often impossible. See Williams-Yulee v. Fla. Bar , --- U.S. ----, 135 S.Ct. 1656, 1661, 191 L.Ed.2d 570 (2015).
Packingham does not resolve the issue of whether the proper level of scrutiny in this case is strict or intermediate. There the Court said the statute at issue failed even intermediate scrutiny, making it unnecessary to decide whether the proper level of scrutiny was strict or intermediate. Packingham , 137 S.Ct. at 1736.
Most decisions addressing sex-offender registries have applied intermediate scrutiny, even on First Amendment issues. See, e.g. , Doe v. Harris , 772 F.3d 563, 576 (9th Cir. 2014) ; Doe v. Prosecutor , 705 F.3d 694, 698 (7th Cir. 2013) ; Doe v. Shurtleff , 628 F.3d 1217, 1223 (10th Cir. 2010). Because the challenged Florida statute bans no speech at all and imposes only *1259 modest burdens on speech, the better view is that intermediate scrutiny applies here, too.
V. The Statute Survives Intermediate Scrutiny
This statute survives intermediate scrutiny. The state's interest in reducing sex offenses is significant, indeed compelling. That the internet has sometimes been used to contact sex-offense victims-including to groom child victims-is undeniable. That convicted sex offenders have sometimes used the internet to contact new victims-including child victims-is undeniable. The record includes unrebutted testimony that this has indeed occurred. See Hoffman Decl., ECF No. 77-2, at ¶ 20. The plaintiffs' own statements that the Florida registration requirement has deterred them from using the internet for legitimate purposes suggests that other sex offenders might be equally deterred from using the internet for illegitimate purposes. And the record shows that law enforcement officers have used the registry's internet-identifier information to investigate and solve crimes. See id. at ¶ 19.
The registration requirement is narrowly tailored, requiring disclosure only of email addresses and internet identifiers used for direct user-to-user communications. If the person on the other end of the user-to-user communication knows the registrant's true identity, the challenged requirement will make no difference at all. Thus, for example, if a plaintiff communicates with a person who knows the plaintiff's identity, the requirement to register email addresses and internet identifiers won't matter; that the plaintiff is a sex offender is already publicly available through the registry. If, on the other hand, the person on the other end of the user-to-user communication does not know the plaintiff's identity, the challenged requirement will allow the person to learn that he or she is communicating with a sex offender-information that, for most other communications in most other settings, is already available through the registry itself. On the rare occasion when a party to an anonymous user-to-user communication over the internet checks to see whether the person on the other end is a sex offender, the party probably will have a reason to check-suggesting that checking may well serve an important purpose.
The plaintiffs insist, though, that the risk that a convicted sex offender will use the internet to reoffend is exaggerated and that the challenged statute is overbroad, requiring disclosures by individuals and in circumstances that pose no real risk. The plaintiffs say sex offenders as a group are no more likely-indeed less likely-than most other felons to reoffend. The plaintiffs say sex offenders who did not use the internet to commit their sex offenses are not likely to use the internet to commit new sex offenses. And the plaintiffs say properly trained professionals can use reliable tests to sort out offenders who pose a risk to reoffend from those who do not, making it unnecessary to impose disclosure requirements on offenders who pose no risk.
Sex-offender registries sweep broadly, requiring registration for a wide array of offenses committed in a wide array of circumstances. Some registrants pose a substantial risk. Some do not. A state legislature could reasonably decide to narrow the list of offenses mandating registration. But the plaintiffs' assertion that methods are available to reliably identify offenders with qualifying offenses who pose no risk runs counter to common experience and to the considered judgment not just of the State of Florida but of every other state. The Supreme Court has held that a state may require registration of all individuals convicted *1260 of qualifying offenses; a state need not make an individualized assessment of risk. See Conn. Dep't of Pub. Safety v. Doe , 538 U.S. 1, 6-7, 123 S.Ct. 1160, 155 L.Ed.2d 98 (2003).
Responses to the plaintiffs' other assertions also are readily available. Recidivism correlates with criminal history. Convicted sex offenders as a whole may have lower overall criminal histories than other offenders. If so, one would expect sex offenders to have lower overall recidivism rates. But regardless of the overall recidivism rate, it is likely that convicted sex offenders commit more new sex offenses than other offenders. The plaintiffs' proffered studies do not suggest the contrary. There is nothing improper about a state's effort to reduce repeat sex offenses.
That a sex offender did not use the internet for a prior crime-perhaps a crime committed when the internet did not exist or social media were not as widespread-does not indicate the offender will not use the internet in a future crime. It is a person's prior commission of a sexual offense, not the precise manner in which it was committed, that shows at least a past proclivity or willingness to commit a sexual offense and poses a risk that it will happen again.
In any event, the plaintiffs' assertion that the risk is exaggerated does not mean the state's interest in reducing sex offenses is not substantial, indeed compelling. One sex offense is one too many. One opportunity to groom a child victim is one too many. The Supreme Court settled long ago the issue of whether sex-offender registries are constitutionally permissible; they are. See Smith v. Doe I , 538 U.S. 84, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003) ; Conn. Dep't of Pub. Safety v. Doe , 538 U.S. 1, 6-7, 123 S.Ct. 1160, 155 L.Ed.2d 98 (2003). A convicted sex offender may constitutionally be required to register and to publicly disclose name, physical address, and additional information. Requiring the registrant to disclose email addresses and internet identifiers to FDLE is also permissible.
VI. Content Discrimination
Application of intermediate scrutiny to this statute is not inconsistent with the principle that strict scrutiny applies to statutes that are not viewpoint-and content-neutral. This statute is viewpoint neutral-whether a sex offender must register an email address or internet identifier does not depend on the viewpoint expressed. And with one exception, the statute is content neutral-the statute's applicability does not depend on the content of a communication.
The exception is this. The requirement to register internet identifiers has an exception for communications whose primary purpose is the facilitation of commercial transactions involving goods or services. There is no exception for other communications, including, for example, political communications. So a communication between the same individuals over the same platform in the same circumstances at the same time-that is, a communication in the same time, place, and manner-is covered or not depending on the content of the communication.
This is the very paradigm of content discrimination. A law is content discriminatory if it "applies to particular speech because of the topic discussed or the idea or message expressed." Reed v. Town of Gilbert , --- U.S. ----, 135 S.Ct. 2218, 2227, 192 L.Ed.2d 236 (2015). Here a communication is covered or not based on "the topic discussed"-whether a commercial transaction or something else. Put more intuitively, if one must read a message to decide whether a statute applies, *1261 the statute probably discriminates based on content. See McCullen v. Coakley , 573 U.S. 464, 134 S.Ct. 2518, 2531, 189 L.Ed.2d 502 (2014).
The question, then, is whether this exception-an exception intended to narrow the statute's applicability and thus to reduce the burden on speech-has the perverse effect of subjecting a less-burdensome statute to more-stringent scrutiny. For two reasons, the answer is no. First, this is an exception at the margin, having little relationship to the real dispute. Second, the legislature's goal was to prevent overbreadth-to reduce the sweep of the registration requirement-not to favor or disfavor speech on any topic. The Supreme Court's recent statement in rejecting a First Amendment challenge to a different Florida statute could as easily have been written for this case: "We will not punish Florida for leaving open more, rather than fewer, avenues of expression, especially when there is no indication that the selective restriction of speech reflects a pretextual motive." Williams-Yulee v. Fla. Bar , --- U.S. ----, 135 S.Ct. 1656, 1670, 191 L.Ed.2d 570 (2015).
This statute's marginal content discrimination-discrimination with the intent and effect of reducing the burden on speech-does not trigger strict scrutiny.
VII. Anonymous Speech
The First Amendment provides a limited right to anonymous speech. See, e.g. , John Doe 1 v. Reed , 561 U.S. 186, 130 S.Ct. 2811, 177 L.Ed.2d 493 (2010) ; McIntyre v. Ohio Elections Comm'n , 514 U.S. 334, 342, 115 S.Ct. 1511, 131 L.Ed.2d 426 (1995). The plaintiffs say that by requiring disclosure of their internet identifiers, the challenged statute prevents them from engaging in anonymous speech.
At least two federal courts have relied on the right to anonymous speech in striking down statutes requiring sex offenders to disclose internet identifiers to law enforcement officials. See Doe v. Harris , 772 F.3d 563 (9th Cir. 2014) ; White v. Baker , 696 F.Supp.2d 1289 (N.D. Ga. 2010). In both cases, law enforcement officials had authority to disclose the internet identifiers to the public for law enforcement purposes or to protect public safety. The courts held this gave law enforcement officials too much discretion to disclose a speaker's identity, thus violating the First Amendment right to anonymous speech.
Here, FDLE makes available to the public a list of email addresses and internet identifiers associated with registered sex offenders, but FDLE does not publicly disclose which sex offender is associated with which email address or internet identifier. Quite the contrary. FDLE has a policy allowing disclosure of a sex offender's email address or internet identifier to a member of the public only on written request. There has never been a written request, so the information has never been made publicly available.
That there has never been a request makes clear what would be apparent anyway: the public disclosure of which registrant is associated with any given email address or internet identifier is not necessary to serve a substantial state interest. The Commissioner conceded this, or nearly so, at oral argument, labeling "true" the assertion that the state could exempt this information from public disclosure "and not lose one thing in terms of sex offenses." See Rough Tr. of Summ. J. Hr'g at 52. The Commissioner explained the statute's failure to exempt this information from public disclosure only on the ground that in Florida, a legislative exemption from the public-records statute must be passed by a super-majority vote. At least in these circumstances, this is not a state *1262 interest sufficient to override the right to anonymous speech.
A person receiving an email or a communication over the internet who wishes to determine whether it is from a registered sex offender can readily do so, and, if the answer is yes, the person can take appropriate action, breaking off the communication and, if warranted, reporting the communication to law enforcement. Learning the registrant's actual identity, if not already known, would serve no additional substantial purpose.
This order thus enjoins the Commissioner from publicly disclosing the identity of the offender associated with a registered email address or internet identifier. This does not, however, preclude FDLE from disclosing the information to law enforcement officials. The record shows that law enforcement officers have used this information to investigate and solve crimes. See Hoffman Decl., ECF No. 77-2, at ¶ 19. This is sufficient to override the right to anonymous speech.
VIII. The Statute Is Not Unconstitutionally Vague
Failure to disclose email addresses and internet identifiers as required is a crime. See Fla. Stat. § 943.0435(9)(a). A criminal statute must "give ordinary people fair notice of the conduct it punishes." Johnson v. United States , --- U.S. ----, 135 S.Ct. 2551, 2556-57, 192 L.Ed.2d 569 (2015). The "degree of vagueness that the Constitution tolerates ... depends in part on the nature of the enactment." Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc. , 455 U.S. 489, 498, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982).
A statute's scienter requirement is a factor in the analysis. See id. at 499, 102 S.Ct. 1186. This statute indicates that lack of notice of the duty to register is a defense. See Fla. Stat. § 943.0435(9)(d) (providing that an arrest for, or service of an information or complaint charging, failure to register as required constitutes notice of the duty to register, and that if charged with a subsequent failure to register, a defendant may not assert the defense of lack of notice).
The Commissioner's acknowledgment, and this order's holding, that the requirement to register internet identifiers is triggered only by direct user-to-user communications puts to rest most of the plaintiffs' complaints about the statute's ambiguities. In other respects the statute is not a model of clarity but gives fair notice of the conduct it punishes-of what a registered sex offender must disclose.
A registrant must disclose email addresses. This is clear enough; the plaintiffs do not contend otherwise. A registrant also must disclose internet identifiers-usernames-that the registrant actually uses for direct user-to-user communications over the internet. This is again clear enough.
There is an exception that turns on the content of a communication-whether the primary purpose is to facilitate a commercial transaction involving goods or services. For some communications, though surely not most, the applicability of this exception may present a close question. But "[c]lose cases can be imagined under virtually any statute"; this, without more, does not render a statute impermissibly vague. United States v. Williams , 553 U.S. 285, 306, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008).
There are two other exceptions that turn not on the content of the communication but on the nature of the website over which the communication is made-whether the website's primary purpose is the *1263 dissemination of news-or on the identity of the person with whom the registrant is communicating-whether the person is acting on behalf of a governmental entity. For some communications, though again surely not most, the applicability of the first of these exceptions, and perhaps even the second, could present a close question. But this again does not render the statute impermissibly vague.
Finally, a username need not be registered based only on its use on a website or application that does not allow users to create web pages or profiles as described in the statute. This is perhaps the statute's least clear provision. Even so, the application of this provision is clear in most instances; the ambiguity exists only at the margins. Perhaps more importantly, it is far from clear that the ambiguity will ever make a real difference in a registrant's real decision whether to register a username. Pressed at oral argument for real-world examples of what actual difference the registration requirement would make, the plaintiffs struggled to cite any concrete example for which the perceived ambiguity of the web-page and profile provisions would matter. This statute, as authoritatively construed by FDLE and in this order, is not impermissibly vague.
IX. Conclusion
The statute requiring convicted sex offenders to disclose to FDLE their email addresses and internet identifiers-identifiers actually used for direct user-to-user communications over the internet-is not unconstitutional. Making that information available to law enforcement officers for official use is not unconstitutional. Public disclosure of email addresses and internet identifiers associated with registered sex offenders-without disclosing the identity of the sex offender associated with a given email address or internet identifier-is not unconstitutional. But the state's interest in disclosing the identity of the registrant associated with any given email address or internet identifier is not sufficient to overcome the registrant's limited right to anonymous speech.
For these reasons,
IT IS ORDERED:
1. The summary-judgment motions, ECF Nos. 76 and 77, are granted in part and denied in part.
2. It is declared that the requirement in Florida Statutes § 943.0435 for convicted sex offenders to disclose to the Florida Department of Law Enforcement their email addresses and internet identifiers, defined to apply only when a registrant actually uses an identifier to communicate over the internet directly with another user, is constitutional. The Constitution does not prohibit FDLE from making the disclosed information available to law enforcement agencies and officers for official use. The Constitution does not prohibit FDLE from making publicly available a list of email addresses and internet identifiers that have been registered, but the Constitution prohibits FDLE from making publicly available the identity of a registrant associated with any given email address or internet identifier.
3. The Commissioner of the Florida Department of Law Enforcement is enjoined from disclosing the identity of a sex-offender registrant associated with any given email address or internet identifier, with this exception: the Commissioner may make this information available to law enforcement agencies and officers for official use only. This injunction does not prohibit FDLE from disclosing information FDLE has obtained from independent sources unrelated to the registrant's submission of the information to the sex-offender registry.
*1264 4. This injunction binds the Commissioner and his officers, agents, servants, employees, and attorneys-and others in active concert or participation with any of them-who receive actual notice of this injunction by personal service or otherwise.
5. The clerk must enter judgment and close the file.
SO ORDERED on September 21, 2018.